THOMAS S. HAYS, AMOS HOLLIS, AND MARY HERBERT, *vs.* FRANCIS HOLLIS, BY HER NEXT FRIEND, JAMES A. SUTTON.—*December, 1849.*

Relief will be granted against a deed where oppression or imposition has been practised in obtaining it; and gross inadequacy of price is one of the evidences of such imposition or oppression.

Where one person advances the purchase money for land, and a deed is taken in the name of another, a resulting trust is created by operation of law, in favor of the party advancing the purchase money, and parol proof may be used to prove these facts, which, when established, take the case out of the statute of frauds.

No such resulting trust will arise where a settlement or donation is deliberately designed by a party competent to make it.

Payment or advance of the purchase money by *the party claiming the trust,*

before or at the time of the purchase, is indispensable to the creation of such a trust.

In this case relief was refused, because the testimony did not make out a case within the above principles of law.

The rule of law which denies to a party claiming under a deed, the privilege of sustaining it by any other consideration than that mentioned in it, does not allow a grantor or donor to destroy his own deed, by showing a consideration different from the one expressed on its face.

Cases may occur where it may be indicative to a greater or less extent of fraud, imposition, or imbecility, but a smaller or different consideration can never, of itself, avail a grantor or donor, of competent intellect, to avoid his solemn deed, executed with full knowledge and free consent.

Appeal from the *Court of Chancery*.

The original bill in this cause was filed on the equity side of *Harford* county court, on the 21st of May, 1840, by the appellee against the appellants, *Hays* and *Hollis*, praying, upon the grounds therein stated, that one of them *(Hays,)* might be declared to hold certain property which had been conveyed to him by the complainant and her husband, *Amos Hollis*, the other defendant, in trust for her separate use, or that a new trustee should be appointed for that purpose, to whom the said *Hays* should be required to execute a conveyance of the property, and for general relief.

The bill, and supplemental bill, which latter was filed in May, 1843, allege, in substance, that the complainant was, upon her marriage, seized, in her own right, in fee, of a parcel of land containing about one hundred acres, and worth upwards of $2,000. That her husband, from whom she separated some time after the marriage, was a man of intemperate and prodigal habits, and that his interest in said land, whatever it was, acquired by the marriage, after being repeatedly taken in execution, was finally purchased, at a constable's sale, by a certain *Thomas Hendon*. That being destitute of any other property, and having no other home but this, she procured from a friend the money to re-purchase it from *Hendon*, and supposing that, to secure it from the consequences of her husband's extravagance, the conveyance must be made to some third person, the said *Hendon*, and herself, and her husband, by their deeds,

dated respectively on the 3rd and the 12th of September, 1836, conveyed the property to the defendant, *Hays,* under the express understanding and agreement, that it should be held by him, in trust, for the separate use of the complainant, and subject to her control. That no consideration was paid by *Hays* for the land, which was conveyed to him as the friend of the complainant, and for the purpose aforesaid. That the deed from the complainant and her husband to *Hays,* though absolute upon its face, was intended to be in trust for her, and that it was procured by fraud and imposition upon her credulity and ignorance, and that *Hays* now fraudulently denies that complainant has any interest in the property, claiming to hold the same as his own, absolutely. That when the complainant executed the deed, which she never read, she supposed it to be in proper form to accomplish the object contemplated by her, relying entirely upon the representations of *Hays,* &c.

The answer of *Hays* admits that the complainant was seized of the land as stated, and that the husband, an intemperate and improvident man, has, for several years, been living separate and apart from her. That her husband's interest, acquired by the marriage, was levied on by his creditors, and sold to *Hendon,* as stated, and that conveyances at the periods mentioned, were made to him, the defendant, by *Hendon* and his wife, and the complainant and her husband. The trust, however, as charged, is denied in positive terms, and the answer then proceeds to state, that the complainant has no children, and his, the defendant's wife, is her niece, being the daughter of a sister. That *Hendon* being in possession of the property under his purchase, had, for several years, permitted the complainant to occupy a part of the dwelling house thereon, but in the year 1836, he became disposed to sell his interest, and had agreed with some one for the purchase thereof. That complainant then sent for him, the defendant, and stating that her health was feeble, and that she did not expect to survive her husband, proposed to him, if he would purchase the title of *Hendon,* and would procure her husband to join in the conveyance, she would convey to the defendant her residuary in-

terest in the land, it having always been her intention to give to the defendant's wife whatever property she might have, and that not only was there a total silence in regard to a trust, but that nothing was ever said or alluded to upon the subject of any obligation on the part of defendant, to provide for the support, or to permit the complainant to occupy a part of the dwelling house, as *Hendon* had done, though it is probable she may have believed that he would do so. That the defendant hesitated about making the purchase of *Hendon*, and only agreed to do so upon the assurance that the complainant would join with her husband in a conveyance to him to perfect his title, and the answer avers, that this purchase was the consideration for the deed from the complainant and her husband to him. The answer denies that the purchase money mentioned in the deed from *Hendon* and wife, was paid or furnished by the complainant, and states that it was borrowed from a *Mrs. Herbert*, on a mortgage of the land, and upon his, the defendant's, bill obligatory. That besides the purchase by *Hendon* of the estate of the husband in the land, he, *Hendon*, held a bill of sale of the personal property, and that he, the defendant, bought of *Hendon* this personal property, as well as the land, giving for the land $100, and for the personal property between $50 and $60, the sum of $150 being paid with the money borrowed from *Mrs. Herbert*, and the small balance out of his own pocket. The answer admits, that the money consideration mentioned in the deed from the complainant and her husband to him, was not paid. The defendant avers, that the deed was read to the complainant before she executed it, prior to which she had it in her possession about ten days, and pleads the statute of frauds.

The consideration mentioned in the deed from the complainant and her husband, to the defendant, *Hays*, is $100, and that from *Hendon* and wife, $150.

A great number of witnesses were examined, by whose depositions the following facts were, in the opinion of the chancellor, established:

1st. That the money with which *Hendon* was paid for the purchase of the interest of the complainant's husband, in the land purchased by him at the constable's sale, was procured upon a mortgage of the fee simple interest in the property, and that this fee simple interest was conveyed to the defendant, *Hays,* by the complainant and her husband, to enable him to make such mortgage.

2nd. That the defendant, *Hays,* at the time the negotiation was on foot, said, that it was for the "use or the good of the complainant."

3rd. That the land was worth from $1,500 to $2,000, and that defendant paid but $100 for it, being part of the $150 which was procured upon the mortgage, as aforesaid, the other $50 being paid for some articles of personal property.

4th. That complainant executed the deed to the defendant freely and willingly, and expressed herself entirely satisfied with it, immediately after its execution, at which period nothing was said about a trust.

5th. That the complainant is an aged woman, and has no property but that which is in controversy in this cause, and has not much acquaintance with business transactions.

The cause having been removed to the court of chancery, the chancellor (JOHNSON,) on the 16th of February, 1847, passed an order directing the cause to stand over, in order to make *Mrs. Herbert,* to whom *Hays* had mortgaged the property, a party to the suit. Accompanying this order, he delivered an opinion favorable to the rights of the complainant to the relief asked in the bill, which is reported in 1 *Md. Ch. Decisions,* 79.

The required amendment having been made, *Mrs. Herbert,* in her answer, states that she made the loan to secure which said mortgage was executed "for the use and benefit of the complainant, and upon her earnest solicitation to save her property, which was about to be sold for the claims of *Hendon;*" that respondent required, for her security, a mortgage upon the entire fee simple title, and as she understood, both from the com-

46    v.8

Hays, *et al., vs.* Hollis.—1849.

plainant and said *Hays,* the latter was acting merely as the friend in the transaction.

Additional testimony was taken, which is sufficiently stated in the opinion of this court, and the cause being again submitted, the chancellor, on the 30th of October, 1847, passed a decree requiring *Hays* to convey the property to a new trustee, to be held for the sole and separate use of the complainant, subject to the mortgage debt due *Mrs. Herbert,* and to account for the rents and profits subject to such allowances as he might prove himself entitled to, and from this decree the defendants appealed.

The cause was argued before DORSEY, C. J., CHAMBERS, SPENCE, MARTIN, MAGRUDER, and FRICK, J.

OTHO SCOTT, for the appellants, relied upon the following points:

1st. There was no fraud in the execution of the deeds to *Hays,* they were just such instruments as the parties intended they should be.

2nd. There was no resulting trust to *Mrs. Hollis.* Upon the facts of the case, no such trust could arise, she neither paid the purchase money, nor was it intended she should have the legal estate.

3rd. There was no conventional trust for the benefit of *Mrs. Hollis,* and if there were such a parol agreement, it is void under the statute of frauds.

4th. There was no such inadequacy of price as would invalidate the deeds. The interest of *Mrs. Hollis* was not available to her, she could not sell or devise it, without the consent of her husband, and would derive no benefit from it till his death.

5th. There was no imposition practised upon her, she only conveyed what would have passed, by her death, to the wives of *Hendon* and *Hays. Hendon* she had quarrelled with, and she wanted his wife excluded, *Hays* she could safely rely on

for support, from the relation of his wife to her, and she desired that he should have the property.

H. W. Archer, and J. J. Archer, for the appellee, insisted:

1st. That the transaction on the part of the appellant, *Hays*, was fraudulent.

2nd. That the price paid by the appellant, is grossly inadequate, that a court of equity will relieve against the deeds, as against conscience, unreasonable and oppressive.

3rd. That there is a resulting trust in favor of the appellee, under both deeds, to appellant, *Hays*.

4th. That the statute of frauds is no bar to the relief sought by the appellee.

Chambers, J., delivered the opinion of this court.

The propositions of law, on which the appellee relies to sustain the decree in this case, may all be conceded, to wit: that a fraudulent deed can convey no title to the grantee; that relief will be given where oppression or imposition have been practiced, and that gross inadequacy of the price paid, is one of the evidences of such oppression or imposition; that where one person advances the purchase money for land, and a deed is taken in the name of another, a resulting trust is created by operation of law, in favor of the party advancing the purchase money, and that parol testimony may be resorted to, for the purpose of proving these facts, which, when established, take the case out of the statute of frauds. The material inquiry, then, is, has the testimony established such a state of case as these principles of law embrace?

Upon the bill and answer, alone, there can be no ground on which the complainant below, the appellee here, can claim relief. The agreement by *Hays* (the defendant below,) to purchase the property, as the friend of the complainant, and for her use, as alleged in the bill, is most positively denied. The bill avers, that complainant induced *Hendon* to sell his interest to *Hays*, for her advantage and use. The answer asserts, that

*Hendon* was about to sell to a stranger, when he was urged by complainant to interpose, not to purchase for her, but for himself; and in regard to the allegation, that *Hays* volunteered his agency in originating and arranging the conveyance from *Hendon,* the answer asserts, and the proof is clear, that *Hays* reluctantly engaged in the transaction.

The material charges in the original and supplemental bills, without stopping to notice apparent inconsistencies, are, that the conveyances to *Hays* were made " upon the express understanding and agreement, previously entered into between them, that *Hays* would hold the lands, and all the title and interest conveyed, in trust for her sole and separate use, and would pay to her the rents and profits as they accrued, and would afterwards execute a proper instrument declaratory of the trust, or would re-convey it to her in such manner as to secure it to her and her heirs, exclusive of her husband." That this was done in consequence of the suggestion by *Hays,* that it was necessary to avoid the waste of her property by her husband; that " it was perfectly understood between them, he was to hold the property as trustee, and subject to her exclusive direction and control."

The supplemental bill alleges, that the complainant supposing that, to secure the land from her husband's liabilities, it was necessary the legal title should be conveyed to some other person, *Hendon,* and her husband, and herself, made the deeds to *Hays,* to be held for her sole and separate use, and subject to her disposal; " that she designed and intended her deed to have the operation and effect of a deed of trust," and a fraud is charged for causing the deed to be prepared as an absolute deed, without a trust. To these charges the defendant was called upon to answer, and he has denied them all in the most peremptory terms.

He says, that the interest of her husband in her land, had been sold, as also all his personal property, and was then in possession of *Hendon,* who had permitted her to occupy a room in the house, *Hendon's* wife and *Hays'* wife being her nieces, and nearest of kin; that, after the property was sold, she and her

husband had separated; that *Hendon* intending to remove, was about to sell the land and house to a stranger, and in this state of things the complainant applied to him, and more than once urged him to purchase the property of *Hendon*, assuring him she did not expect to out live her husband, as her health was feeble, and that she always had intended to give her property to the wife of *Hays*, and if he would purchase *Hendon's* interest, and procure her husband to join with her in a deed, she would convey her reversionary interest to him. Now it must depend upon the proofs in the cause, which of these conflicting statements we are to adopt, not, however, forgetting that the complainant is before us impeaching her own deed, nor that the defendant is entitled to have his answer respected, until over-thrown by testimony.

As a preliminary remark, it may be said, that in a case where an old lady, not charged with the cares of a family, and circulating in a general society, had suddenly come again into the possession of her estate, after having seen it for many years in other hands, she would be very apt to furnish very impressive evidence of her conviction, at least, if not of her gratification, at such a restoration. In this case, some of the witnesses have gone into all her declarations used in many conversations on the subject of the land and the deeds, and yet, until about the time of filing the bill, no one of the many persons who seem to have conversed with her, testify to a word from her, indicating any such conviction of the improvement in her pecuniary condition. It would also be most probable, that an owner, on being restored to the direction and control of property, and to the pernancy of netts and profits, under such circumstances, would not be slow to express to those concerned in the actual conduct of the estate, some distinct and intelligible indication of her claim to the substantial fruits of these rights. Such is the character of the evidence which would be consistent with the case alleged by the complainant. Let us see if it meets this expectation.

*Mrs. Mary Ann Smith,* on whose testimony the appellee chiefly relies, says the appellee, *Mrs. Hollis,* first applied to

the deponent for the money, (to pay *Hendon*,) "for the use of *Hays;*" that *Hays* obtained the money, through the agency of *Mrs. Hollis*, from *Mrs. Herbert*, who inquired how she was to be secured, that she wanted a mortgage, and asked whether *Mrs. Hollis* had given him a deed, and *Hays* replied, that *Mrs. Hollis* "had given him a deed:" on being asked by *Mrs. Herbert* what was to become of *Mrs. Hollis*, *Hays* told her "it was for her use or her good." This last expression, is the only one sworn to by any witness in the cause as coming from *Hays*, which indicates any purpose on his part to hold the property in any other way than as absolute owner. But it must be taken in connection with other parts of the conversation. *Hays then had* a deed—both *Mrs. Herbert* and *Mrs. Smith* knew this fact—they knew it was a deed which enabled him to give a mortgage to secure the loan, and *Mrs. Herbert* had stated that *Mrs. Hollis'* reversion must be conveyed to effect this; in other words, *Hays* must have the fee-simple to give a satisfactory security. Surely, then, it was not possible that either *Mrs. Herbert* or *Mrs. Smith* could understand, that the deed was to give *Hays* a mere nominal title as trustee for the use of *Mrs. Hollis*. If they, then, were informed that *Hays* was to make a deed to any other person as trustee for *Mrs. Hollis*, it is certainly very remarkable, that not an allusion should be made to such an arrangement, but that, on the contrary, it was thought necessary or proper to admonish *Mrs. Hollis* of the danger she incurred in "making over her property" to *Hays*. *Mrs. Herbert* "*understood,* that a deed was to be executed by *Mrs. Hollis* and *Hendon*, to *Hays*, and that *Hays* was to convey it back again to *Mrs. Hollis;*" but when or from whom, or why she so *understood*, she does not inform us, nor does her deposition state one fact which justifies such an understanding. Of the large number of witnesses sworn, these two alone have testified to anything which looks like an agreement or acknowledgment of *Hays*, that a trust was contemplated, and we cannot but think, if this testimony and none other was before the court, without an answer and without

objection, there would be great difficulty in determining that it proved any contract.

There is, however, a great preponderance of testimony to sustain the answer; *Hendon's* wife was co-heiress apparent to *Mrs. Hollis*, yet, it had never been heard in his family that *Hays* was to hold the property as trustee.

*Pierce*, one of the magistrates who took her acknowledgment, deposes, that *Mrs. Hollis* spoke of the deed she was about to make to *Hays*, expressed the utmost gratification, when it was done, that she had "*concluded* what she had long had upon her mind;" that "she wanted *Hays* and his wife to have the property, she was getting old and they would support her." Is this language consistent with the idea, that the deed was virtually a deed for her own exclusive benefit; a deed that did not give one farthing to *Hays* and his wife; a deed that gave the rents and profits, and the entire and exclusive control of the property, not to *Hays*, but to herself?

*Norris*, the other acting magistrate, proves, that *Mrs. Hollis* expressed herself well satisfied with what she had done; that "she always intended the land for *Hays* and his wife, that though it was not valuable, it would do for a home for them and their children." Both depose, that she did not say one word about any trust in the deed, then or afterwards. Is this conduct or these declarations consistent with an existing conviction of title, vested by that deed, or to be vested by any future deed in herself?

*Rogers* deposes to a conversation with *Mrs. Hollis*, in which she not only expressed her reasons for giving the property to *Hays*, "all her right and title," "*for nothing*," but assigned the reason, that "*Mrs. Hays* was the poorest of her nieces, and she wished her to have it;" and in frequent conversations, both before and after the deed, he "never heard her intimate, that *Hays* held it in trust, or was to reconvey it to her or any one else."

To all this mass of testimony the appellee's counsel oppose the fact, that the inadequacy of price is, of itself, conclusive, either of fraud in procuring the deed or of a resulting trust.

We do not think this a case of inadequacy of price, or affected by the rules which govern that class of cases. There was, between these parties, no price paid at all—not one dollar—nor was it a sale. The purchase was made by *Hays*, of *Hendon's* interest in the land and personal property, as we think the agreement required, and the consideration for that purchase is truly stated. *Mrs. Hollis* agreed to convey her reversionary interest to her niece's husband, if he would purchase *Hendon's* interest, and obtain the husband's consent to unite in a deed. But, say the counsel, it is incredible that she would make such an arrangement, unless she is imbecile to a degree which demands the protection of the court, because it strips her of every farthing she has, and leaves her destitute. Well, she had the power to do this if she pleased, and witnesses, who are not impeached, swear, they cautioned her not to convey away all her estate, and yet she would do so. That she has no intellectual infirmity, which requires the interposition of chancery, is abundantly proved. But, is it the effect of this deed to reduce the complainant to a more destitute and dependent condition? The property had been sold, the personal, with no prospect of its ever being restored to her, and the land for the joint lives of her husband and herself, he being much younger and of better health. It had been held by her niece's husband, and she had occupied part of the house; it was about to be sold, and to be sold to a stranger, with every probability of her being turned out of the house. She had become displeased with the family of *Mrs. Hendon*, her niece, with whom she had resided, and her only near relative was *Mrs. Hays*, to whom it was her wish that all her property should go. It would seem to be a just expectation, that her condition without her deed, would be one of complete dependence, and her only reliance for assistance or comfortable accommodation, so far as the record shows, must have been alone upon *Hays*. She did, in fact, as she told one of the witnesses, expect *Hays* to take care of her.

It was by no means, then, so very remarkable that she was willing to convey her reversionary title to *Hays*. It afforded

her no part of a maintenance if she retained it, and it does not appear for what it would have sold, if put into the market, or that the idea of selling it was ever suggested by her or to her. By conveying it to *Hays*, she could reasonably expect to strengthen the claims, which already made it his duty to assist the aunt of his wife, and also effected a purpose which she seems to have cherished with much earnestness; not the less perhaps, after the domestic collision with her other niece's family.

The appellee's counsel has misapplied the law, which denies to a party claiming under a deed the privilege of sustaining it by any other consideration than that mentioned. The doctrine does not, most surely, allow a grantor or donor to destroy his own deed, by showing a consideration different from the one expressed on its face. Cases may occur where it may be indicative, to a greater or less extent, of fraud, imposition or imbecility, but a smaller or a different consideration never can, of itself, avail a grantor or donor of competent intellect to terminate the obligation of a solemn instrument, which he has executed with full knowledge and free consent.

We have been much pressed with the argument, that a resulting trust must be decreed, because the money paid by *Hays* was raised by loan, secured by a mortgage on the land, and not advanced, as it is said by *Hays*. The chancellor seems to have based his decree on that ground. Now, if what we have assumed, be the facts of the case, there is no implication arising from the circumstance, that the money was furnished at the solicitation of *Mrs. Hollis*, or by pledge of the title. If *Mrs. Hollis*, herself, had furnished the money from her own purse to pay *Hendon*, with a view to secure the property to *Hays*, there would not still be a foundation for any such legal presumption in this case. No such trust will arise, where a settlement or donation is deliberately designed by a party competent to make it. See the case of *Dyer and Dyer*, *White's Eq. Cases*, 138, with the very full references in the notes reported in 65 *Law Lib*, 167.

Indeed, the material fact of the advance by the complainant

47    v.8

of the purchase money to *Hendon* is not sustained, without which a resulting trust could not arise, so far as related to the interest conveyed by *Hendon*. Payment or advance of the purchase money by the party claiming the trust, before or at the time of the purchase, is indispensable. Here the purchase money was loaned, not to the complainant, but to *Hays*, and he alone became liable, personally, for the amount, besides giving the security of a mortgage.

The court will sign a decree, reversing the decree of the chancellor, and dismissing the complainant's bill, but, under the circumstances, without costs.

DECREE REVERSED, AND

BILL DISMISSED.