## JOSEPH KELLER *vs.* PHILIP B. KUNKEL.

*Statute of Frauds—Parol Evidence—Resulting Trust.*

An agreement in relation to lands, and tending to create a trust in relation thereto, cannot be proven by parol evidence, because it would be contrary to the 7th section of the Statute of Frauds.

A resulting trust arises when one person buys an estate and pays the purchase money, but takes the deed in the name of the other person, in which case the trust results by construction in favor of the person who paid the money.

The bill alleged that the complainant bought of H. and others, as trustees, at public auction, a tract of land. That not having the money to pay for it, he borrowed the amount of the defendant upon certain collateral securities; which having been paid or advanced by the defendant for him, he caused the deed for certain other considerations to be made to the defendant instead of himself. HELD :

1st. That here all the conditions necessary to raise a resulting trust concurred.

2nd. That if these facts were proved by parol, as they might be, a trust resulted by implication of law in favor of the person purchasing and paying.

The evidence showed that the purchase money paid to the trustee was loaned to the complainant by the defendant, and was paid by the defendant as agent for the complainant and for his use. HELD :

That the purchase money being thus advanced by the complainant through the defendant, the latter was a trustee of the former of the premises conveyed to him.

APPEAL from the Circuit Court of Frederick County, in Equity.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., BOWIE, BRENT and ROBINSON, J.

*F. J. Nelson* and *J. E. R. Wood,* for the appellant.

*Francis Brengle,* for the appellee.

BOWIE, J., delivered the opinion of the Court.

The appellant filed his bill of complaint in the Circuit Court for Frederick County, Md., sitting in equity, against the appellee, to compel him to account for certain moneys alleged to have been collected and received for the appellant's use, and to execute and deliver to appellant a deed for certain real estate, purchased by appellant (and paid for by him with money borrowed of the appellee,) and conveyed to said appellee in secret trust for appellant. The allegations of the bill, as far as they relate to the questions raised by this appeal, are substantially as follows :

About the 22d of October 1864, William C. Hoffman and others, as trustees, sold at auction, a parcel of land lying in Frederick County, described in complainant's Exhibit A, for the sum of $580, to the complainant, who not having the ready money to pay for the same, agreed with the appellee, " if he would advance the same for the appellant, the appellant would deliver the appellee sundry collateral securities thereinafter specifically set forth, as an indemnity for such advance, and that the appellant would procure the conveyance of the land to be made to the appellee, to be held by him until the advance should be repaid, or the amount realized from said collateral securities, by the appellee ; in pursuance of said agreement, and to prevent appellant's wife (with whom he was then on bad terms) from acquiring a potential right of dower in the premises, a deed of conveyance was made by the said Hoffman and others, to the appellee, of said land on the 26th of October 1864, which is duly recorded ; the appellee furnished the purchase money, and the appellant thereupon delivered to him the securities as indemnity therefor, with full power by endorsements and assign-

ments to collect the same." On payment by the appellant to the appellee, or the realization of the same, by the latter, from the security, it was agreed that the latter should convey to the former the premises described in Exhibit A.

The bill charged a similar agreement between the appellant and appellee, in respect to an undivided interest in a tract of land described in Exhibit B, in payment for which the appellee advanced $400, and agreed to convey the same to appellant upon payment of the same; but afterwards sold the same at a great advance, and retained the proceeds.

The bill charged that the appellee had collected large sums from the collateral securities endorsed and assigned to him, whereby he was fully reimbursed the sums loaned to him, and prayed relief as above. The appellee, by his answer, denied the truth of the charges contained in the bill, as therein charged, but averred that whilst he purchased the two premises mentioned in the bill, to all intents and purposes, as his own property, he was willing to sell and convey the same to appellant, on payment of the amount of the purchase money, which appellee had paid therefor, with interest from the date of purchase, and that after he became purchaser he endeavored to aid the appellant in raising the purchase money which he was to pay the respondent; he denied the endorsement and assignment of the securities as indemnity on collateral security, or any agreement to accept them as such, or any agreement to convey the premises described in Exhibit A, as alleged, etc.

The appellee averred that the appellant never in fact paid one dollar on account of said purchase money; and that all the understandings and arrangements were *by parol*, and failed of execution because of the failure of the appellant to execute the same on his part, and to pay the purchase money, and he is advised that all the arrange-

ments, etc., were absolutely without effect in law and equity, and the appellee also relied on the Statute of Limitations.

To the defendant's answer a general replication was filed.

Evidence was taken under commission duly issued, executed and returned, in support of the bill and answer. Exceptions were filed to portions of the evidence on each side.

After argument, the Court below decreed the complainant's bill should be dismissed, with costs. The grounds of the Court's decision, as indicated by its opinion, and which are relied on by the appellee for its affirmance, are,

1st. That the averments of the bill do not show a resulting trust, which arises where one person buys an estate, and pays the purchase money, but takes the deed in the name of another person, then the trust results by construction in favor of the person who paid the money.

" The agreements, or facts relied on in this case, are not manifested or proved by any writing, but rests wholly on parol. They set out a trust (or as the books call it, a conventional trust) in relation to lands, and being denied by the answer, the complainant alleging the agreement, must, to sustain it, produce such proof as will satisfy the requirements of the Statue of Frauds."

The bill and all the testimony in this case, (even if admissible) show only a parol agreement, between parties in relation to lands, and tend to create a trust in relation thereto. This cannot be shown by parol evidence, because it would be contrary to the 7th section of the Statute of Frauds and Perjuries, which provides that " all *declarations* or creation of trust and confidence of any lands, etc., shall be manifested and proved by some writing by the party who is by law enabled to declare such trust."

In other words, the complainant's bill does not show a case of a trust arising by operation of law, otherwise called a " resulting trust," but it does show in connection

with the testimony, a verbal agreement in relation to lands, tending to create a trust in relation thereto, contrary to the 7th section of the Statute of Frauds.

There is no question as to the correctness of the general principles announced by the Court below, as governing trusts arising from operation of law, known as "resulting trusts," and trusts arising from the agreement of the parties, known as "conventional trusts." The Court below, in their opinion above cited, admit the distinction, and the appellants concede it, but they contend that the allegations of the bill clearly constitute a case of resulting trust, and the evidence as clearly establishes the case made by the bill.

It is of the first importance, therefore, to determine to which of these classes the case made by the bill belongs, as the competency, as well as sufficiency of the testimony, to maintain the allegations will be governed by the result.

The Court below have very correctly defined a resulting trust to be that "which arises where one person buys an estate and pays the purchase money, but takes the deed in the name of another person, then a trust results, by construction, in favor of the person who pays the money."

The same definition is substantially given in *Hays vs. Hollis,* 8 *Gill,* 357 ; 1 *Md. Ch. Dec.,* 479 ; *McElderry vs. Shipley, et al.,* 2 *Md.,* 36, 37.

Divested of all superfluous words, the bill charges that the appellant bought of a certain William C. Hoffman and others, as trustees, at public auction, a tract of land at and for the sum of $580 ; that, not having the money to pay for it, he borrowed the amount of the appellee upon certain collateral security ; which, having been paid by appellee, or advanced for him, he caused the deed, for certain other considerations, to be made to the appellee instead of himself.

Here all the conditions necessary to raise a resulting trust seem to us to concur.

Here is the purchase and payment by one party and the conveyance to a third.

If these facts are proved by parol, as they undoubtedly may be, there can be no question a trust results, or arises by implication of law, in favor of the person purchasing and paying.

This necessarily leads to a brief investigation of the testimony on the subject of the sale of the property described in Exhibit A, and the execution of the deed to the appellee.

Both appellant and appellee have testified in support of their respective pretensions, and, as usual in such cases, the evidence of one neutralizes that of the other.

There are, however, disinterested witnesses, and certain facts, proved here and there, which give a decided preponderance to the weight of the appellant's testimony.

Wm. C. Hoffman, one of the trustees who sold the property, testifies it was bid in by Jos. C. Keller ; that Keller gave him a written order, which was produced and proved, dated Frederick, 16 October, 1864, requesting and empowering him, Hoffman, to deed the property bought of him by Keller to the appellee.

As to the payment for the land, Hoffman deposes : "I think it was paid by Philip B. Kunkel's check."

Hoffman expressing surprise at Kunkel's paying for the property, the latter told him that Keller had given him claims as collateral security. The receipt of W. C. Hoffman, trustee, is produced and proved as follows :

Received, October 26, 1864, of Philip B. Kunkel, a check for five hundred dollars, and eighty dollars in bank notes, as payment in full for six acres, two roods, and twenty-two perches of land, the real estate of James Hilleary, sold by me as trustee for the heirs.

W. C. Hoffman, Trustee.

On the day of this payment, Kunkel charges Keller, in his ledger, with $500 paid Hoffman. It is thus demon-

strated that $500 was paid by Kunkel to Hoffman on Keller's account. The money advanced or loaned by Kunkel to Keller was as much the money of the latter as if he had earned it day by day.

There is sometimes great difficulty in determining whether a case is one of trust arising merely by operation of law, or whether it is one created by the agreement of the parties.

The case of *Bartlett vs. Pickersgill*, cited in 4 *East*, 579, furnishes an example.

This Court, in the case of *Dorsey vs. Clarke*, 4 *H. & J.*, 557, referring to that case, say : " Where a man employs an agent by parol to buy an estate, who buys it accordingly, and no part of the consideration is paid by the principal, and there is no written agreement between the parties, he cannot compel the agent to convey the estate to him, as that would be in the teeth of the statute."

That was the character of the case of *Dorsey vs. Clarke*. The complainant alleged that Dorsey had purchased the land at sheriff's sale, and when he became the purchaser and received the sheriff's deed it was expressly agreed by and between Yeildhall and Dorsey, that the land was only to be held by Dorsey as security for the money advanced by Dorsey, and that he would reconvey the same at any time upon payment of the money so advanced, etc.

There was no note or memorandum in writing of the above agreement. The complainants sought to supply the absence of proof in writing by producing entries from the books of Dorsey in his own hand-writing, which were admitted in evidence. These were as follows :

" 1807, March 9th. Cash paid to Sheriff and other expenses on Benjamin Yeildhall's propperty, bought by me........ .......................    $316

" To one year's rent, due and ending 9th of March, 1808........................................ .....£7   2 2¼

" 1808, May 6th. By cash......................... 3 15 0

June 4th. By cash......... ............... .. 3 15 0 "

Referring to these, this Court said: "Neither do the entries from the books of Dorsey establish the facts that the purchase money was loaned by Dorsey to Yeildhall. *Yeildhall is not made debtor for the same, and the entries are such as any purchaser might make with a view of showing his disbursements and the state of his property."* *Ibid*, 557.

If the books of Dorsey had shown, in the judgment of the Court, that the purchase money was loaned by Dorsey to Yeildhall, the inference is almost irresistible that this Court would in that case have declared the transaction a resulting trust.

In this case, the appellee's books do show that he had charged the appellant with the amount of $500, paid Hoffman on the same day that the latter receipted to the appellee for the sum of $580, as payment in full for the land.

The receipt of Hoffman, trustee, corresponds in many particulars with the entries in the appellee's books, and confirms the testimony of the appellant in relation to the loan.

The receipt is for "a check for five hundred dollars, and eighty dollars in bank notes."

The exhibit P. B. K. charges Keller same day, "to cash, Hoffman, $500."

On the 15th October 1864, the appellant is credited, "By cash of him this date, eighty ($80.00.)"

Mr. Kunkel, in his answer to the eleventh interrogatory in chief, testifying in his own behalf, says: "I haven't got the property charged, but I charged him (meaning the appellant) with the purchase money, five hundred dollars ($500,) the entry October 26th 1864. Cash Hoffman and the entry November 19 1864, 'to cash house on Patrick street,' refer to the property described in exhibits A and B respectively; my ledger, in these transactions, is my book of original entry, and exhibit P. B. K. No. 1 is a true

copy of my ledger and a true copy of my account with Joseph C. Keller.''

The entries above cited, taken with the receipt and explanations given by Kunkel and Keller, prove conclusively, in our opinion, that five hundred dollars of the purchase money paid to Hoffman was loaned by Kunkel to Keller, and paid by Kunkel, as agent for Keller, and for his use, and that the purchase money being thus advanced by Keller, through Kunkel, the latter is a trustee for the former of the premises described in Exhibit A.

The decree appealed from will be reversed and the cause remanded for further proceedings, in conformity with the views expressed in this opinion.

*Decree reversed, and*
*cause remanded.*

(Decided 13th June, 1877.)