## SAMUEL ROSENTHAL *vs.* GEORGE A. MILLER ET AL.

*Trusts—Execution by Statute of Uses—Invalidity of Trust— Resulting Beneficial Interest—Sale by Trustee— Application of Purchase Money.*

Where land was conveyed to trustees in trust for a certain society, with express power in the trustees to sell, assign, lease, mortgage, or otherwise convey the property, and it was the intention that the trustees should actively manage and control it as a burial ground for the benefit of members of the society and others, belonging to a certain church, *held* that the trust was not a passive trust, so as to be executed by the statute of uses. p. 230

Where a trust, created by a conveyance to trustees for the benefit of members of a certain church, was void as violating the rule against perpetuities or as being uncertain as regards the beneficiaries, a resulting trust arose in favor of those members of the church who contributed to the purchase price. p. 231

If a trust, sought to be created by will or by conveyance without consideration, fails in whole or in part, a trust results to the party creating the trust or to his heirs and legal representatives, while if there is a consideration for the conveyance, a trust results, on the failure of the trust, in favor of the grantee or other party furnishing the consideration. p. 231

Where a deed of land in trust for a society contained an absolute power of sale, and the trustees conveyed to another, by a deed which recited that the members of the society had authorized the sale, *held* that a subsequent purchaser from such other, even though he was affected with notice that such other held in trust for the society, was not bound to see to the application of the purchase money. pp. 231, 233

*Decided April 29th, 1925.*

Appeal from the Circuit Court of Baltimore City (STEIN, J.).

Bill by George A. Miller and S. Katherine Miller, his wife, against Samuel Rosenthal, seeking specific performance of a contract to purchase land. From a decree for plaintiffs, defendant appeals. Affirmed.

The cause was submitted on briefs to BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and WALSH, JJ.

*Joseph Sherbow,* for the appellant.

*C. Alex. Fairbank, Jr.,* and *Coady & Farley,* for the appellees.

WALSH, J., delivered the opinion of the Court.

During the influenza epidemic in the fall of 1918 some of the members of the Russian Greek Catholic Church of Baltimore City, a voluntary unincorporated association, determined to secure a burial ground for the use of themselves and their co-religionists, and to carry out this intention Rev. Constantine Seletzky, their priest, was asked to secure the ground, and to have it transferred to certain trustees for the use of the Russian Resurrection Society, an unincorporated benevolent association connected with the church. A tract of land in Baltimore County was finally selected and purchased, and the title was conveyed to the "Rev. Constantine C. Seletzky, Stefan Michasink and Andro Maximuk, trustees, and their successors and assigns forever in fee simple, for the use and benefit of said Russian Resurrection Society with full power to said trustee to sell, assign, lease, mortgage or otherwise convey said property."

The purchase price of the property was $2,050, of which $1,250 was paid in cash, and a purchase money mortgage was given for the balance of $800. On March 7th, 1919, just a few months after the acquisition of the property, the trustees, pursuant to an alleged authorization by said society, conveyed it, by a deed absolute on its face, to one John Kouchutko, and he in turn executed a mortgage on the property to Constantine Seletzky individually for $2,050. There-

upon, eight alleged members of the Russian Resurrection Society filed a bill in the Circuit Court for Baltimore County against the society and the trustees, setting out that the land had been purchased for use as a burial ground, that all the members of the society or church who contributed $25 were to receive a burial lot; that seven of them had so contributed, and the eighth had given $50 and loaned $300; that none of them had received any lot; that all of them had ceased to be members of the aforesaid society, and that the deed from the trustees to Kouchutko, and the mortgage by the latter to Seletzky, were without consideration and void and made for the purpose of defrauding the complainants. The bill then asked that the deed and mortgage be set aside, a trustee appointed to sell the land and divide the proceeds among those equitably entitled thereto, and for other relief. The answer of the trustees and the society admitted the use for which the property was purchased, and admitted also that one of the complainants had advanced $300 towards the purchase price, but it denied that there had been any agreement or understanding that those contributing $25 should receive a lot, and alleged that all such contributions were free-will offerings; that a total of $774 of the purchase money had been so donated, and that the balance of the $1,250 cash paid on the property was made up of the $300 loaned by one of the complainants, of $100 loaned by Kouchutko, and of money given by the trustees themselves. The answer further alleged that the property was conveyed to Kouchutko as a more convenient method of holding the title; that said Kouchutko held the property for the benefit of the Russian Resurrection Society, and that Rev. Seletzky also held the mortgage of $2,050 for the benefit of said society, the mortgage having been given to prevent said Kouchutko from disposing of the property contrary to the intention of said society. No testimony was taken in that case, but according to the testimony in the present case Rev. Seletzky, upon the advice of his counsel that it would cost as much to contest the case as it would to settle it, paid the complainants

the sums they claimed, amounting in all to about $500, and the case was dismissed. The money used in this settlement is said to have been furnished by Rev. Seletzky.

On May 6th, 1921, Kouchutko's loan of $100 for the purchase of the property was paid off by one Alexander Chubinski, who had about $200 in it, and the property was then conveyed to Chubinski, and by him conveyed on October 30th, 1922, to Earl W. Blackburn, who subsequently conveyed it to the appellees. During all this time Rev. Seletzky paid the interest on the purchase money mortgage of $800, and he retained the mortgage for $2,050 given him by Kouchutko until February 3rd, 1922, when he assigned it to his wife, and she, together with Seletzky, on November 22, 1922, sold and assigned it to William E. Schloegel, for a valuable consideration, the Rev. Seletzky apparently retaining the money. It further appears from the testimony that, at the time the property was bought in 1918, the Russian Resurrection Society was composed of about forty members; that only part of them contributed anything towards the purchase price of the property, and no permanent record was kept of those who did contribute; that the trustees had the land laid off in burial lots with a road running through it, but that no lots were ever sold; that as a result of the Russian Revolution the Russian Greek Catholic Church in Baltimore became divided; that this division extended to the Russian Resurrection Society and eventually resulted in its complete disorganization. It also appears that all of the $1,250 contributed to the purchase price has been accounted for and paid to the donors, except the sum of about $350, and the parties who gave this amount are apparently unknown and have made no claim for it since they donated it in 1918.

After purchasing the property from Blackburn in 1922 the appellees paid off both the purchase money mortgage and the second mortgage held by Schloegel, built seven houses on the land at a cost of about $25,000, and then undertook to sell them. The appellant agreed in writing to buy one of

the houses for $4,500, of which sum $300 was paid in cash, and the balance was to be paid on the delivery of a deed conveying a "good and merchantable" fee-simple title. He declined to complete the purchase, and the appellees there-upon filed a bill for specific performance in the Circuit Court of Baltimore City, the appellant being a resident of that city. The answer of the appellant alleged that the title to the land was not "good and merchantable," and the de-cision of the lower court being against him, he took this appeal.

The objections to the title are all based on the original deed to Rev. Seletzky et al., trustees, the appellant contend-ing that the trust sought to be created by it was a passive one and the use was executed in the beneficiaries of the trust; that the trust is void for uncertainty as to the beneficiaries; that the deed violates the rule against perpetuities, and finally that the purchaser of the property would have to see the application of the purchase money.

We do not think that the trust sought to be created was of so passive a nature that the statute of uses would execute it and vest title in the members of the society. The trustees were given express power to sell, assign, lease, mortgage or otherwise convey the property; they actually did have it laid off in burial lots and attempted to dispose of these lots, and it seems apparent from the record that it was the intention of those concerned with this project that the trustees should actively manage and control the property as a burial ground for the members of the Russian Greek Catholic Church of Baltimore City. Such a trust would not be executed by the statute. *Tiffany on Real Property*, 355, 412; 26 *R. C. L.* 1173 to 1179, and note in 78 *Am. Dec.* 408. The disposition of the remaining objections to the title will, we think, be simplified if we first consider a few rules which are of almost universal application to trusts in this country.

Where there are certain trusts, created either by will or deed, which fail in whole or in part, or which are of such an indefinite nature, either as to the purposes or benefici-

aries, that courts of equity will not carry them into effect, or which are illegal in their nature and character, a resulting trust will arise to the party creating the trust, or to his heirs and legal representatives, as the case may be. *Story's Equity* (14th Ed.), par. 1592, and cases cited in notes; 26 *R. C. L.* 1216, paragraphs 59 and 60. "When there is a consideration for the conveyance and it is made upon a trust which is void for uncertainty or otherwise fails, then the grantee takes the beneficial interest." *Trustees etc, v. Jackson Square Church,* 84 Md. 173, 177; *Pomeroy's Equity,* par. 1033; *Perry on Trusts,* sec. 151. The last statement assumes that the consideration was paid by the grantee; if it was paid by some one else, a resulting trust arises in favor of the party furnishing the consideration. *Keller v. Kunkel,* 46 Md. 565; *Euler v. Schroeder,* 112 Md. 155, 158; *Hays v. Hollis,* 8 Gill 357; *Heiskell v. Trout,* 31 W. Va. 810; *Pomeroy's Equity,* par. 1037; *Story's Equity* (14th Ed.), par. 1597; 26 *R. C. L.* 1219, par. 64. Applying these principles to the present case, it becomes obvious that if the trust sought to be created by the original deed to the trustees was void because it violated the rule against perpetuities or because the beneficiaries of the trust were too uncertain, then a resulting trust arose in favor of those who contributed to the purchase price. And if the trust was valid, then the parties entitled to the beneficial interest in the property are the members of the Russian Resurrection Society. It accordingly follows that either one of these classes took the beneficial interest in the property, but as no member of either class is a party to this suit, it is unnecessary to determine which of the two classes really holds the beneficial interest. However, as the property was actually sold, and there was a trust raised or created for either the contributors or the members of the society, the question of whether or not the purchaser is required to see to the application of th purchase money becomes of vital importance.

In discussing this doctrine in his work on Equity, par. 1506, Judge Story says: "The general principle of courts

of equity in regard to the duty of purchasers * * *, in cases of sales of property or charges on property under trusts * * *, to see to the application of the purchase money is this: that wherever the trust or charge is of a defined and limited nature the purchaser must himself see that the purchase money is applied to the proper discharge of the trust, but wherever the trust is of a general and unlimited nature, he need not see to it." And in delivering the opinion of the Supreme Court in *Wormley v. Wormley,* 8 Wheat. 442, the same eminent judge, in stating the doctrine negatively, says: "Where the trust is defined in its object, and the purchase money is to be reinvested upon trusts which require time and discretion, or the acts of sale and reinvestment are manifestly contemplated to be at a distance from each other, the purchaser shall not be bound to look to the application of the purchase money, for the trustee is clothed with a discretion in the management of the trust fund, and if any persons are to suffer by his misconduct, it should be rather those who have reposed confidence than those who have bought under an apparently authorized act." The foregoing principles were cited with approval by our predecessors in the case of *Keister v. Scott,* 61 Md. 507, 509, and no question can be entertained as to their soundness. See also *Van Bokkenlen v. Tinges,* 58 Md. 53; *Meister v. Meister,* 121 Md. 440, 444; *McLaughlin v. Fleming,* 124 Md. 28, 37; *Powell v. Bailey,* 138 Md. 169, 175; 26 R. C. L. 1294, par. 147. And judged by these principles, we do not think that there was any obligation on the purchasers in the present case to see to the application of the purchase money.

There was nothing in the deed creating the trust to indicate for what purpose the land was to be used, but this original deed did contain an absolute power of sale, and the deed made to Kouchutko in pursuance of this power recited that the members of the Russian Resurrection Society had authorized the sale. In our opinion this was sufficient to protect a purchaser for value without notice, and it is not disputed that the ultimate purchasers paid a valuable consideration

and had no notice of any irregularity in the deed to Kouchutko, unless such notice was given by the proceedings in Baltimore County. We are by no means satisfied that these proceedings were sufficient to put a purchaser on inquiry; the case was entered dismissed without any testimony having been taken, and there is nothing in the docket entries or proceedings to show that any settlement was ever made; but assuming, without deciding, that it would have the effect of notifying purchasers that Kouchutko held the property in trust, it would seem to be a rather harsh rule to require a purchaser to look to the application of the purchase money. He would not know whether the money was to be reinvested at some future time in another burial ground, or part of it so used and the balance devoted to the upkeep of such ground, or whether the money was to be held in trust for the general purposes of the society, or was to be returned to the contributors, nor would he know who the contributors were, and if, under such circumstances, he paid the trustees and the latter misappropriated or misapplied these funds, we think the loss should, as stated by Judge Story, *supra,* be borne by those who placed confidence in them, rather than by those who bought under an apparently authorized act.

This question is usually a difficult one, and the present case fully illustrates the wisdom of Judge Story's concluding remarks in the chapter on this subject in his work on *Equity,* par. 1516, where he says: "These are some of the most important and nice distinctions which have been adopted by courts of equity upon this intricate topic; and they lead strongly to the conclusion to which not only eminent jurists but also eminent judges have arrived, that it would have been far better to have held in all cases that the party having the right to sell had also the right to receive the purchase-money, without any further responsibility on the part of the purchaser as to its application."

In accordance with the foregoing views we hold that, under the facts in this case, the appellees acquired a good and merchantable title, and that they were under no obligation to see to the application of the purchase-money. If the

members of the society, or the parties who contributed the three or four hundred dollars of the total purchase price still unaccounted for, have any claim at all, it is against the trustees or other persons who received the purchase price of the property and the proceeds of the second mortgage originally held by Rev. Seletzky.

*Decree affirmed, with costs to the appellees.*