This is a controversy between plaintiffs and defendant, submitted without action, to determine whether the defendant will acquire a good and indefeasible title to land, which he had therefore agreed to purchase from Mrs. Ada Heath Montgomery and Dr. John C. Montgomery, her husband, and for which they had tendered to the defendant a good and sufficient deed of conveyance, in accordance with the contract, but which deed defendant refused to accept, alleging that they could not pass a good title thereto.
The following are the agreed facts upon which the submission is based:
It is not necessary to set out, in haec verba, the several deeds, or deeds of trust, mentioned in the case agreed, but it will suffice to set out only one or two clauses in each of the deeds. It is provided in Exhibit "I," Oakhurst Land Company to B. D. Heath, trustee, as follows: "The said B. D. Heath, trustee, is fully empowered and authorized to use, mortgage, sell, transfer, convey, or dispose of in any manner said lots *Page 433 
of land at his own will and his own discretion without accounting for the proceeds from same; having all the powers, rights, and authority as set out in a certain paper-writing of even date with this deed, executed by B. D. Heath to B. D. Heath, trustee, for Harry M. Heath, which paper-writing is to be recorded in the office of the register of deeds for Mecklenburg County, to which reference is hereby made."
In Exhibit "I-A" is the following: "The said B. D. Heath shall have full power and authority to revoke this conveyance (411) and render the same utterly and absolutely void, if at any time during his life he so desires.
"The said B. D. Heath, trustee, shall have power at any and all times to pledge, mortgage, sell, transfer, assign, and dispose of in any shape, form, or manner any part and all of said property set out in this conveyance, and shall not be required to account to the said Harry M. Heath, or his guardian, or any one else, for the proceeds from same, and shall not at any time be required to account for the profits, interest, or income from said property.
"The said B. D. Heath, trustee, shall have the power to exchange any of said property for other property, or substitute any other property therefor.
"The said B. D. Heath, trustee, shall have absolute and unlimited power, and authority unrestricted, in handling, using, selling, trading, transferring, and disposing of, in anywise, any and all of said property.
"If the said B. D. Heath fails during his life to appoint a trustee or guardian to take charge of and handle the said property which he shall leave in trust for the support, care, and maintenance of his said son, Harry M. Heath, then at the death of the said B. D. Heath, trustee, the clerk of the Superior Court of Mecklenburg County shall appoint some suitable and discreet person, who, after giving a sufficient bond approved by the said clerk, shall take charge of said property and shall hold the same in trust for the said Harry M. Heath."
After hearing and full deliberation, his Honor, Judge Long, delivered the following judgment upon the case agreed and the exhibits:
"This cause coming on to be heard before his Honor, B. F. Long, judge holding the courts for the Fourteenth Judicial District, upon the agreed statement of facts contained in this controversy without action, the court upon the construction of the deeds of trust and the will, copies of which are attached to the said submission, adjudges:
"(a) That the said trustee, having been given in and by said deeds of trust the absolute right to dispose of the property therein conveyed as and when he saw fit, and to altogether withhold from the said Harry M. Heath any income derived therefrom, the said Harry M. Heath *Page 434 
consequently acquired no vested right, estate, or interest in said lands, or the income derived therefrom, and he having died prior to the death of the said B. D. Heath, the lands described in said deeds of trust either reverted to the Oakhurst Land Company, the original donor or grantor, or became absolutely vested in the said B. D. Heath, the trustee named in said deeds of trust:
"(b) That if the said Harry M. Heath took or acquired any right, estate, or interest in said lands, or the income derived therefrom, the same absolutely terminated upon his death, as it appears that (412) said deeds of trust were made for the purpose of securing to the said Harry M. Heath, who was hopelessly insane at the time they were executed, only a suitable support and maintenance therefrom, if his father, B. D. Heath, the trustee, in the exercise of the absolute power conferred upon him by said deeds of trust, should elect to use the income from said property for said purpose, as it is clear that it was not the intention of the donor to confer any right, interest, or estate in said lands upon the said Harry M. Heath — then hopelessly insane — which might be transmissible upon his death to his heirs at law.
"(c) That the said B. D. Heath by his last will and testament exercised the power conferred upon him by said deeds of trust to dispose of, and did dispose of, the lands therein described, or whatever interest he had therein.
"(d) That the wife and surviving children of the said B. D. Heath took whatever interest he, the said B. D. Heath, had in said lands subject to the limitations and conditions set forth in the various provisions of said will, just as they took and acquired the balance of the residuum of the estate of the said B. D. Heath.
"(e) That, as above stated, the wife and children of said testator acquired whatever interest he had in the said lands, subject to the conditions and limitations imposed upon the balance of the residuum of the estate in and by his said will.
"(f) That the said Harry M. Heath, having died before the death of his father, the trustee, (that fact) thereby terminated the object of said trusts, and the said trustee never having sold or otherwise disposed of the lands described in said deeds of trust, except in and by his last will and testament, the court is of the opinion that the estate in said lands reverted to the Oakhurst Land Company, the grantor of the plaintiff, Mrs. Ada H. Montgomery, and as it is admitted that the Oakhurst Land Company had a fee-simple title to said lands prior to the execution of the deeds of trust hereinbefore referred to, the court is further of the opinion that by its deed it conveyed a fee-simple title thereto to the said Mrs. Ada H. Montgomery, and that she can, therefore, convey a fee-simple title to the lands to the defendant J. C. Newell. *Page 435 
"It is therefore accordingly adjudged that the said J. C. Newell be ordered and directed to specifically perform his contract to pay for the lot of land first described in the agreed statement of facts upon a tender to him of a fee-simple warranty deed theretofore executed by the said Ada H. Montgomery and her husband, the coplaintiff, Dr. J. C. Montgomery."
From this judgment defendant appealed.
After stating the case, delivered the following opinion for the Court: The judgment of the court as rendered by Judge B. F. Long is so clear, comprehensive, and conclusive, both as to the facts and the law applicable thereto, that it is hardly necessary to do much more than state it and adopt it as the opinion of this Court.
It may be well to refer as briefly as we can to that phase of resulting trusts to which the one under consideration belongs. Perry, in his excellent treatise on the Doctrine of Trusts (edition of 1899), p. 212, and secs. 159-160, says, at least substantially: If a trust for a specific purpose fails by the failure of the purpose, the property reverts to the donor or his heirs. If the gift is made upon a trust, and the trust is insufficiently or ineffectually declared, as, if it is too indefinite, vague, and uncertain to be carried into effect, it will result to the settler, his heirs, or representatives. Whether a trust is insufficiently declared or not depends of course upon the particular construction to be given to each individual deed or will; and so, whether a trust is too vague to be executed or not, depends upon the interpretation given to each instrument. If the declaration of trust is too imperfect to establish that purpose, and yet plainly shows that the intention was that the donee should not take beneficially, and that the sole purpose of the gift or grant was to carry out the purpose of the trust, which fails, the donee will take in trust for the donor or his heirs; but if it appear from the whole instrument that some beneficial interest was intended for the donee, or that he was intended to take beneficially in case the particular purpose fails, no trust will result, but he will take the estate discharged of all burdens. Where a gift is made upon trusts that are void, in whole or in part, for illegality, or that fail by lapse or otherwise, during the life of the donor, a trust will result to the donor, his heirs, or legal representatives, if the property is not otherwise disposed of. Thus, where the gift or trust is void by statute, as a disposition in favor of persons or objects prohibited from taking, or given at a time and in a *Page 436 
manner forbidden, as in violation of the statutes of mortmain, or similar statutes, or where the gift contravenes some policy of the law, as tending to a perpetuity, or where it fails by the death of the beneficial donee orcestui que trust, a trust, to the extent of the estate given, will result to the donor, or his heirs, or legal representatives, if it is not otherwise disposed of. Bond v. Moore, 90 N.C. 239; Ackroyd v. Simpson, 1 Bro. Ch. 503; Cox v. Parker, 22 Beavan 188; Harker v. Reilly, 4 Delw. Ch. 72.
We deem this elucidation of the question perfectly adequate (414) and inclusive to illustrate this doctrine relating to voluntary conveyances, or wills, when the trust is not declared, but arises by operation of law, or where it is expressly, or by clear and manifest implication, declared, and in the latter the declared purpose of the trust fails or becomes impossible of execution or performance, and no beneficial interest is intended for the donee in trust. Sometimes the circumstances of a transaction are such that the person who takes the legal estate in property cannot also enjoy the beneficial interest, without necessarily violating some established principle of equity; the court will immediately raise a constructive trust, and fasten it upon the conscience of the legal owner, so as to convert him into a trustee for the parties, who in equity are entitled to the beneficial enjoyment. These constructive trusts may be separately considered under two distinct classes of cases: one where the acquisition of the legal estate is tainted with fraud either actual or equitable. And the other, where the trust depends upon some general equitable rule, independently of the existence of fraud. Hill on Trustees (Wharton's Ed. of 1854), top p. 197, star page 144. "There is one good general and infallible rule that goes to both kinds of trusts. It is such a general rule as never deceives; a general rule to which there is no exception; and that is this: the law never implies, the court never presumes a trust, but in case of absolute necessity. The reason of this rule is sacred; for if the chancery do once take liberty to construe a trust by implication of law, or to presume a trust unnecessarily, a way is opened for the Lord Chancellor to construe or presume any man in England out of his estate. And so at last every case in court will become casus pro amico." (Per Lord Nottingham, in Cookv. Fountain, 3 Swans. 585.)
In this case, however, the trust, which was created by express agreement of the parties, clearly resulted to the donor or trustee, who was capable of taking it at the time, the Oakhurst Land Company, and its deed, passed the indefeasible fee it thus acquired, to Mrs. Ada H. Montgomery, whose deed, with joinder of her husband and proper acknowledgment by her and her husband, and her privy examination, when *Page 437 
registered, will, under the agreement, pass it on to the purchaser (who is the defendant) from her.
But the appellee takes another position, which is, at least, plausible if not tenable. It is this, as he says: "If the deeds of trust in question created a resulting trust in favor of the Oakhurst Land Company, either before or after the death of Harry M. Heath, then its deed to the plaintiff, Mrs. Ada Heath Montgomery, dated 25 September, 1919, conveyed a fee-simple title to the lot of land contracted by her to be sold to the defendant, and she can, therefore, convey to him a fee-simple title thereto. It will be noted that section four of the agreed `statement of facts' recites that the Oakhurst Land Company conveyed to Mrs. Ada Heath Montgomery the land described in paragraph (415) three of said statement, by its deed date 25 September, 1918, pursuant to the orders and directions of B. D. Heath, who then owned the entire stock in said corporation. It therefore follows, if we are correct in the foregoing proposition as to the legal effect of the deeds of trust in question, that the Oakhurst Land Company had a fee-simple title to this land, on 25 September, 1918, when it conveyed the same to Mrs. Ada Heath Montgomery, and that she being seized in fee of said land by virtue of said deed, can convey a fee-simple title thereto to the defendant. If the deeds of trust in question did not create, by operation of law, a resulting trust in favor of the Oakhurst Land Company, then such deeds of trust created a fee-simple title to said lands in B. D. Heath, the trustee, which he had a right to dispose of by his will and testament.
This was expressly held by this Court in St. James v. Bagley,138 N.C. 385, in an elaborate and well considered opinion by the Court, where it was held that a deed made by the grantors "to the vestry and wardens of St. James Church in the town of Wilmington for the purpose of aiding in the establishment of a home for indigent widows or orphans, or in the promotion of any other charitable or religious objects to which the property hereinafter conveyed may be appropriated by said parties of the second part," conveyed a fee-simple title (absolute) for said lands to the grantees, for the reason that no imperative trust was created by the language of the deed, and there appeared no intention on the part of the donors, or the deed itself, that the title should revert to them upon the termination of the uses and purposes for which it was conveyed.
In 1 Perry on Trusts (6 ed.), sec. 152, it is said: "But a distinction must be observed between a devise to a person for a particular purpose, with no intention of conferring upon him any beneficial interest, and a devise with a view of conferring the beneficial interest, but subject to a *Page 438 
particular charge, wish, or desire. Thus, if a gift be made to one and his heirs, charged with the payment of debts, it is a gift for a particular purpose, but not for that purpose only; and if it is the intention to confer upon the donee of the legal estate a beneficial interest after the particular purpose is satisfied without exhausting the whole estate, the surplus goes to the donee and does not result. But if the gift is upon a trust to pay debts, that is a gift for a particular purpose and nothing more. If the whole estate is given for that one purpose, and that purpose does not exhaust the whole estate, the remainder reverts to the donee or his heirs. Or, as Vice-Chancellor Wood stated the rule: (1) Where there is a gift to one to enable him to do something, where he has a choice whether he will do it or not, then the gift is for his own benefit, the motive why it is given to him being stated; (2) where you find the (416) gift is for the general purposes of the will, then the person who takes the estate cannot take the surplus, after satisfying a trust, for his own benefit; (3) where a charge is created by the will, the devisee takes the surplus for his own benefit, and no trust is implied."
In this connection it must be borne in mind that B. D. Heath was in fact, though not in law, the owner of the land described in the deeds of trust; that in said deeds of trust an absolute right was conferred upon him, and served by him, to dispose of the property therein described, as and when and for such purposes as he might see fit. These facts might tend to show that the parties to the transaction intended to convey to him a fee-simple title to said property to do with it as he saw fit, subject to the stated charge thereon for the benefit of his afflicted son, in which event, of course, there could be no resulting trust to the donor, the Oakhurst Land Company, as no distinct and imperative trust would be imposed upon the gift, the said B. D. Heath would therefore have the right to dispose of said land at his will and pleasure. But in our case there was a distinct and imperative trust created and imposed upon the land, by the Oakhurst Land Company's deed to B. D. Heath, as trustee, which was that he would apply the income or profit thereof to the support and maintenance of his insane and helpless son who was, by reason of his unfortunate infirmity, unable to take care of himself. There was no discretion given him here, but the trust, and the object thereof, were clearly and definitely expressed in the deed creating it, and no one can say, with any show of reason, that the land was conveyed, or the trust created, for the individual benefit or advantage of B. D. Heath. It would therefore seem to be a clear case for a reverter to the donor, as the trust had wholly failed before the death of B. D. Heath. This could not be regarded as a mere charge upon the land for the benefit of the son, but must be considered as a well declared and specific trust. *Page 439 
It may well be added that in both deeds B. D. Heath is described "as trustee," and, in Exhibit "I-A," he is described as "trustee of Harry M. Heath," and in the latter it is expressly stated that his object was to make provision for the care and support of his son, Harry M. Heath, and by clear implication, not for himself, but merely in fulfillment of his filial duty. The large powers given him by the deed of trust relate to his manner and methods of selling, disposing of, or exchanging the land, or substituting other lands therefor, and the deed providing that he shall not in any manner answer to his son, Harry M. Heath, for the execution of his trust. The provision as to the appointment of another trustee, should B. D. Heath die before fully administering the trust, and his son Harry M. Heath should survive him, was inserted to prevent the failure of a trustee, by reason of his own death, to complete the full execution of the trust. The specific requirement is that if B. D. Heath shall fail to appoint a trustee to take his place, in case (417) of his death before completing the execution of his trust, then that some one be appointed for the purpose, but he clearly recognizes the fact that he is nothing more than a trustee for the specific purpose declared, for his son, and in no sense for himself. This, without other considerations, conclusively shows that there was no beneficial interest in B. D. Heath to prevent a reverter to the land company.
So it is argued and concluded that in any admissible view the title in the defendant will be a perfectly good one.
It would be useless to discuss the other questions raised by counsel.
We can find no error in the proceedings, or in the judgment, and we therefore approve and affirm the same.
Affirmed.
Cited: Fisher v. Fisher, 218 N.C. 48.