LEVI CISEL v. TRACY MADELEINE CISEL, Appellant.—No. 38968.—180 S. W. (2d) 748.

Division One, June 5, 1944.

*Hal H. Thurston* for appellant.

*Thos. W. McNamara* for respondents.

CLARK, P. J.—This case was transferred to this court by the Kansas City Court of Appeals because title to real estate is involved. The respondent (plaintiff) brought suit to partition and sell certain described real estate, alleging that it was purchased by and conveyed to plaintiff and defendant while they were living together as husband and wife, the title being taken in their joint names as tenants by the entirety; that later plaintiff procured a divorce from defendant and thereupon the title vested in them as equal owners as tenants in common. Defendant (appellant) filed answer alleging that she paid the entire purchase price, praying that partition be denied and she be adjudged the sole owner. A jury was waived and the court, after hearing the evidence, found for the plaintiff, adjudging title in the parties as equal owners subject to an existing mortgage, and ordering a sale and division of the proceeds.

The parties disagree as to whether the case is at law or in equity. So far as the petition is concerned, it is a law case. Apparently the answer attempts to plead a resulting trust but, although it prays equitable relief, it is doubtful that the allegations are sufficient basis for any relief to defendant either at law or in equity. The answer merely states that defendant paid the purchase money. It does not allege fraud or mistake, nor even that the plaintiff, and not the defendant, directed the title to be taken in the joint names of the parties. However, we will review it as a case in equity.

The evidence shows that the parties were married in 1930. Both are licensed attorneys, but appellant has not actively practiced law. In 1931 respondent acquired a small piece of real estate (not involved in this suit) in payment of an attorney fee. The title was taken in his name and so remains. In 1932 the parties entered into a written contract, duly acknowledged, whereby they agreed that all property, real or personal, then owned or thereafter acquired by either should be jointly held by them as tenants by the entirety. Until some time in 1935 appellant remained at home and respondent gave her $75.00 per month, for the payment of household expenses. The real estate described in the petition was purchased on May 15, 1935, the deed being to both the parties "husband and wife, as tenants by

the entirety." The parties made a down payment of $500.00 and gave a deed of trust for the balance, the amount of which is not shown. In 1937 the debt was refinanced and a new deed of trust given for $5100.00. At the time of trial the court found the balance to be $4143.48. About the time the property was purchased appellant procured employment. She received her pay twice a month, one salary check being turned over to respondent to apply on the debt and the other being deposited by her in a savings account in her own name. When she began her employment the respondent increased his allowance to her to $90.00 per month. This money was kept in a "budget box" at the house. Both parties had access to this money and used it to pay household bills. Respondent says that on a few occasions money was taken from this box to pay on the mortgage; also that he paid some family expense in addition to the monthly allowance and contributed to some extent to the payments on the mortgage. Appellant denies this. The evidence shows that most of the payments for the property, including the down payment, came out of the appellant's salary. The parties separated in September, 1937, after which respondent rented the property to others, collected the rents and made payments on the principal and interest of the mortgage. The trial court found that he had collected $146.87 more than he had paid out and ordered one-half of that sum paid to appellant out of the proceeds of the partition sale. Respondent procured a divorce from appellant several months prior to bringing the instant suit for partition. Other evidence will be referred to hereafter.

Appellant places her main reliance upon the claim that she paid the purchase money and therefore a resulting trust arises in her favor. It is true that most of the purchase money came out of appellant's salary, but according to appellant's written contract the money paid to her as salary was owned by the parties jointly as tenants by the entirety. But appellant says the written agreement was abandoned and cites cases holding that a written agreement may be changed or abandoned by a later parol agreement or by the conduct of the parties. It is unnecessary to review those cases for there is no evidence in the instant case that the parties abandoned their written contract. True, appellant says she told respondent that if she could get a job she intended to buy a house and make the payments on same, but there was no evidence that she told him she intended to take title in her own name. When she purchased the property no mention was made of the former contract, but title was taken in their joint names in exact accordance with that contract.

Appellant claims that respondent breached their written contract by maintaining a bank account in his own name and by failing to change to their joint names the title to the property which he acquired in payment of an attorney fee prior to the making of the

written contract. There are several answers to appellant's contention in this regard. Respondent did not sue to enforce the contract. The contract is important in this case only as evidence of the manner in which the parties intended to hold title to their property. The pleadings of neither party mention the contract or the property previously acquired by respondent, or his bank account. In her answer appellant did not claim any interest ▇ in such property nor ask an accounting. Much of the record is devoted to bank statements showing amounts of respondent's deposits and checks. From the total of deposits appellant's counsel deducts what he says is a reasonable amount for respondent's personal and office expense and claims that appellant is entitled to one-half of the remainder. The final balance in respondent's account actually shown by the statements is the sum of $22.33. The evidence does not show the purpose for which any check was drawn. So far as the evidence shows the money may have been spent for proper personal, office or family expense. As already stated, appellant deposited half her salary in a savings account to her own credit. However, neither the title to the property standing in respondent's name nor an accounting between the parties has been brought to issue in this case.

The only question here concerns the title to the real estate described in the petition. On that question there is ample evidence to sustain the trial court's decree even if we entirely disregard the written contract heretofore mentioned. Appellant herself testified that when the property was purchased she knew that the deed was made to both the parties and, further: "No, there was no mental reservation. It was my intention that it should be his as much as mine for a home, but it never occurred to me that we would be separated and the house sold. If that had occurred to me that would have been a very different picture, but it was bought for a home and it was my intention that it would be used as a home for the rest of our lives, and the reason I made the payments that was just our agreement upon my taking the job. That was our mutual agreement, that I was to make the payments and that he was to keep up the expenses."

Appellant stresses a statement made by respondent in his testimony to the effect that he told her when the written agreement was executed that its purpose was to "save the cost of administration in the event of the death of either of us." To us this testimony, instead of favoring appellant's case, is strong evidence against her. It shows that the parties intended to hold their property jointly with right of survivorship.

We concede that where a husband uses his wife's funds to purchase real estate and, without her consent, takes title in his own name or in their joint names a resulting trust arises in her favor. That is not this case. Here, whether or not she furnished the purchase money, the wife freely consented and intended when she purchased

the property that title be taken in the names of her husband and herself with full knowledge of the effect of such a deed. Thereby a tenancy by the entirety was created which was later converted to a tenancy in common by the divorce decree.

In the case of Milligan v. Bing, 341 Mo. 648, 108 S. W. (2d) 108, after discussing facts similar to those in the instant case, this court said: "Otherwise stated, when the wife's money is invested in land without her written assent, a resulting trust arises in her favor, and in favor of her heirs after her death, to the extent of the money so invested. But this rule does not prevent the wife from doing what she pleases with her own separate property. . . . She may invest her own money in land to the full extent of the consideration and take title thereto in the name of herself and husband. Under such circumstances they would hold the land as an estate by the entirety. . . . " [See also Hiatt v. Hiatt (Mo.), 168 S. W. (2d) 1087 and cases cited.]

Upon full review of the record we find no error and the judgment is affirmed. All concur.