MYRA WATSON RAYHER, PLAINTIFF-APPELLANT, v.
EDWARD RAYHER, DEFENDANT-RESPONDENT.

Argued December 7, 1953—Decided December 21, 1953.

Mr. *Franklin D. Trueblood* of the Illinois bar argued the cause for the appellant *pro hac vice* (*Messrs. McCarter, English & Sluder*, attorneys; *Mr. Nicholas Conover English*, of counsel).

Mr. *John W. Griggs* argued the cause for the respondent (*Messrs. Morrison, Lloyd & Griggs*, attorneys).

The opinion of the court was delivered by
VANDERBILT, C. J.  The plaintiff, a resident of Chicago, comes from a family of means and personally has assets worth several thousand dollars.  While attending school in New York City she met the defendant who was then teaching school at a salary of $2,000 a year.  In January, 1945, the plaintiff informed her mother, Mrs. Watson, of her intention to marry the defendant.  Later Mrs. Watson came to New

York City and while in her daughter's apartment in the presence of the defendant Mrs. Watson informed her of the plan formulated by her and her late husband to make separate gifts of real estate of approximately the same value to each of their two daughters at the time of their marriage. In accordance with this plan Mrs. Watson stated that upon returning to Chicago she would have a deed prepared making a gift to the plaintiff of property in Oak Park, Illinois, that was currently being rented. At this point the defendant spoke up, stating that he would like to have his name included in the deed since he thought it would look better and would make it easier for him to help in the management of the property. Mrs. Watson said she did not wish to do this since the property was to be a wedding gift to her daughter and she desired to put the wedding gift in the plaintiff's name only, just as she had done for her other daughter. However, at the plaintiff's insistence and upon her statement in the defendant's presence that he would take his name off the deed any time the plaintiff asked him to do so, the mother finally yielded and agreed to have the deed made out in both names.

A few days prior to the wedding the plaintiff, who was badly upset, informed her mother that the defendant had put on a display of tantrums, whereupon the mother stated that she would not include his name in the deed. The defendant, however, insisted, again stating to the plaintiff and her mother that it would look better and would facilitate his helping the plaintiff in the management of the property. At the plaintiff's insistence and reiteration of her assurance that the defendant would take his name off the deed whenever she requested him to do so, the mother gave in and after the wedding caused the deed to be made out to both the plaintiff and the defendant as tenants by the entirety and delivered the deed to the daughter.

The parties never occupied the Oak Park house but lived on Long Island until March, 1947, when the defendant obtained a teaching position in Teaneck, New Jersey. The plaintiff found a house in Teaneck which she wished to buy

at a price of $10,800, and reported it to her mother, who encouraged the purchase of the property, at the same time agreeing to advance the purchase price as a loan to be secured by a deed for the Oak Park home. The plaintiff informed her mother that she had funds of her own to cover the earnest money of $100 and the down payment of $1,000, but that she would require an additional $9,800 at the closing of title. On the plaintiff's assurance that she would send a quitclaim deed to the Oak Park property the mother forwarded a certified check payable to the plaintiff in the amount of $9,800 which the plaintiff deposited in a joint account that she and her husband maintained in the Chase National Bank in New York City. After the plaintiff had selected the property she wanted to buy, the defendant handled the details of the purchase of the property and had both the contract of sale and the deed made out in their joint names but without any expression of donative intent on the part of the wife. The quitclaim deed to the Oak Park property, signed by both the plaintiff and the defendant, was subsequently forwarded to the mother.

Mrs. Watson cleared approximately $7,700 from the sale of the Oak Park property, which she applied against the loan. Then in the summer of 1947 she gave each of her daughters a gift of $1,000, that to the plaintiff consisting of a credit in that amount against her indebtedness on the loan. All payments on account of this loan were made by the plaintiff except that the defendant drew one check for $100 to Mrs. Watson's order on the joint account in the Chase National Bank. There is presently a balance of approximately $500 due on the loan. Meanwhile the plaintiff had various improvements made to the property at a total cost of approximately $4,000, which she paid from her own separate funds, although the checks on account thereof were drawn from the joint bank account in the Chase National Bank.

In November 1948 the plaintiff left the Teaneck home where the parties had lived until that time and went to live

with her mother in Chicago. On January 2, 1950 she obtained a decree of divorce in the Superior Court of Cook County, Illinois, but since that court did not have personal jurisdiction of the defendant no adjudication of the title to the Teaneck property was made in the divorce proceedings. The defendant has remained in possession of the Teaneck property, claiming that as a result of the divorce decree he and his former wife became tenants in common and that therefore he is entitled to a one-half interest therein.

The plaintiff brought this action against her former husband in the Chancery Division of the Superior Court seeking among other relief the establishment of a trust of the one-half interest in the Teaneck property claimed by the defendant. In his answer the defendant alleged that he was the absolute owner of this one-half interest, denied the validity of plaintiff's Illinois divorce and counterclaimed for a divorce. The trial court upheld the validity of the plaintiff's divorce and found that the defendant held the one-half interest in the property on behalf of the plaintiff and therefore ordered him to convey it to her. On appeal the Appellate Division of the Superior Court, while sustaining the Illinois divorce decree, reversed the judgment of the trial court relating to the property on the ground that the plaintiff had failed to establish the existence of a trust, 25 *N. J. Super.* 494, and we granted the plaintiff's petition for certification to review that judgment, 13 *N. J.* 288.

The vital question presented here concerns the legal effect of the conveyances of both the Oak Park property, from the sale of which a large portion of the purchase price of the Teaneck property was derived, and the Teaneck property to the plaintiff and the defendant as tenants by the entirety. The plaintiff claims that the gift from her mother of the Oak Park property was in fact a gift to her alone and that complete equitable ownership remained in her at all times and carried over into the Teaneck property. The defendant, on the other hand, contends that the Oak Park property was a gift to both him and his wife, that he became an equitable owner of an undivided one-half interest with sur-

vivorship rights therein by virtue of the conveyance to them as tenants by the entirety. He further asserts that regardless of the effect of the conveyance of the Oak Park property there was no evidence of a resulting trust as to the Teaneck property, that the deed thereof vested full, legal and equitable ownership in him and his wife and upon divorce they became tenants in common, *Baker v. Kennerup*, 102 *N. J. Eq.* 367 (*Ch.* 1928).

As far as the deed of the Oak Park property is concerned, it is apparent that Mrs. Watson wished to carry out a plan of giving a house to each of her daughters on her marriage. When her other daughter had married Mrs. Watson had conveyed property to her as a gift, title being taken in that daughter's name only. With the same thought in mind for the plaintiff Mrs. Watson informed the parties of her plan and it was then, upon the defendant's insistence, that the plaintiff asked that the property be placed in both names. Mrs. Watson objected to this, but ultimately gave in and had the deed run to both the plaintiff and the defendant as tenants by the entirety. Concerning her conversation in January 1945 with her daughter and the defendant Mrs. Watson testified as follows:

"I said I was going to give her this piece of property, and Myra asked me if I would consider putting Edward's name on the property, because she thought he could help her handle it, and she thought it would be good experience for him, and he would enjoy working with her. As a gesture of confidence she believed in his integrity to the point she was willing to have his name on the property with her, and I consented because I had the same arrangement with my husband, and he had helped me a great deal. * * * I thought it would be a great help to Myra if he had his name on the property, and could work with her. Q. What, if anything, did he say or did the plaintiff say in his presence? A. That would suit him very well. Q. Who said that; did she say that, or did he? A. He said that."

The plaintiff corroborated most of this testimony, which stands uncontroverted by the defendant. It is apparent that the defendant's name was included in this deed merely as an accommodation to him, and that all parties understood

that he was to have no equitable ownership in the property. The gift was to the plaintiff and the defendant understood that he was to remove his name from the deed whenever the plaintiff requested that he do so. The evidence shows no donative intent on the part of Mrs. Watson to vest any equitable interest in the property in the defendant, but on the contrary it affirmatively shows that the defendant was to act as trustee for the benefit of the plaintiff with respect to any legal interest he might have in the property. In this regard we concur in the finding of the trial judge that:

"The proof is certain, definite, reliable and convincing that the defendant knew the gift of property and money from the mother to the plaintiff was intended as the plaintiff's sole and separate estate, and not a gift to both plaintiff and defendant."

The defendant claims, however, that regardless of the effect of the conveyance of the Oak Park property the purchase of the Teaneck property resulted in a deed to them as tenants by the entirety and that no resulting trust arose as to his interest therein. The Appellate Division upheld this contention on the ground that the plaintiff had failed to bear the burden of proving the existence of a trust. This presents the question of the effect of a tenancy by the entirety where the wife has furnished all of the consideration for the purchase of the property. The related question of advances by a wife to her husband was dealt with in *Van Inwegen v. Van Inwegen*, 4 *N. J.* 46, 51 (1950), in an opinion the rationale of which is especially applicable here:

"It has long been established in this State that where a wife advances money from the principal of her separate estate to her husband there is no presumption that such a transaction constituted a gift; on the contrary, the presumption is that the advancement is a loan or a deposit for safekeeping and the burden of proving the transaction by a preponderance of the evidence to be a gift is upon the husband or the person who asserts it to be a gift. *Cole v. Lee*, 45 *N. J. Eq.* 779 (*E. & A.* 1889) ; *Adoue v. Spencer*, 62 *N. J. Eq.* 782 (*E. & A.* 1900) ; *Brady v. Brady*, 58 *A.* 932 (*Ch.* 1904) ; *Elmer v. Trenton Trust and Safe Deposit Co.*, 76 *N. J. Eq.* 452 (*Ch.* 1909) ; *Riker v. Riker*, 83 *N. J. Eq.* 198 (*Ch.* 1914) ; affirmed, 83 *N. J. Eq.* 693 (*E. & A.* 1914) ; *Reed v.*

*Tilton,* 90 *N. J. Eq.* 42 (*Ch.* 1919); *Yorn v. Yorn,* 139 *N. J. Eq.* 300 (*E. & A.* 1946)."

It is to be observed that a different rule applies where a husband furnishes money to his wife to buy land in her name; in that event there is a presumption of a gift and the fact that the husband paid for improvements upon the property does not rebut this presumption or raise a trust in his favor, *Strong v. Strong,* 134 *N. J. Eq.* 513 (*Ch.* 1944), affirmed 136 *N. J. Eq.* 103 (*E. & A.* 1945). These two cases are not inconsistent; they merely present two different aspects of the relations of husband and wife, which are governed by the same philosophy, and in our opinion the rationale of these cases is equally applicable to the case at bar.

There is no decision of a court of last resort in this State where property purchased from the wife's own funds has been placed in the joint names of husband and wife. The only New Jersey case directly in point is *Pieretti v. Seigling,* 134 *N. J. Eq.* 105 (*Ch.* 1943), where the husband and wife were seized as tenants by the entirety of real property purchased in 1927 wherein they resided until 1941, when they established separate residences. The wife obtained a divorce and a question arose on an accounting between the parties as to the division of this property, which had been purchased by the wife from her own personal funds and the mortgage on which had also been paid off by her with her own money. The court there held that the payment of the purchase price was a gift from the wife to her husband of an undivided one-half interest in the property. A study of that case, however, reveals no evidence such as we have here that when title was taken in the joint names the wife intended her husband to be other than a legal and equitable holder of all the rights of a tenant by the entirety, and accordingly the court held that in the absence of such evidence of a trust a gift would be presumed. The *Pieretti* case is clearly distinguishable on the facts from the case at bar.

Outside of New Jersey we find no unanimity of opinion. Three different views appear in the authorities. First,

according to Bogert on *The Law of Trust and Trustees* (1953 *ed.*), *volume 2A, section 460,* "if the wife pays the price, but has the deed run to herself and her husband as tenants by the entirety or as joint tenants, she is deemed to intend to make a gift to the husband of half the value of the use during their joint lives and of the right of survivorship," citing among other authorities *Walker v. Walker*, 369 *Ill.* 627, 17 *N. E.* 2d 567 (*Sup. Ct.* 1939), *certiorari* denied 306 *U. S.* 657, 59 *S. Ct.* 774, 83 *L. Ed.* 1054 (1939); *Cisel v. Cisel*, 352 *Mo.* 1097, 180 *S. W.* 2d 748 (*Sup. Ct.* 1944); *Nussbacher v. Manderfeld*, 64 *Wyo.* 55, 186 *P.* 2d 548 (*Sup. Ct.* 1947). Second, the *Restatement of the Law of Trusts, sec.* 441, *comment (e)* takes the position that:

"The fact that the payor takes title to property in the name of himself and another jointly is an indication of an intention of the payor to make a beneficial gift of an undivided interest in the property to the other person; and *in the absence of evidence of a different intention of the payor,* the other person does not hold his interest upon a resulting trust for the payor. This is true whether the transfer was made to the payor and the other person as joint tenants or as tenants in common." (Italics supplied)

Third, there is substantial authority for the view expressed in *Schwarz v. United States*, 191 *F.* 2d 618, 621 (*C. A.* 4, 1951). Chief Judge Parker stated:

"The ordinary rule is that, where the wife pays for land and the title is made to her and husband, there is a resulting trust in her favor for the entire property in the absence of clear evidence that the husband was to have a beneficial interest."

See also *Kelly Springfield Tire Co. v. Lester*, 190 *N. C.* 411, 130 *S. E.* 45 (*Sup. Ct.* 1925); *Eagle v. McKown*, 105 *W. Va.* 270, 142 *S. E.* 65 (*Sup. Ct.* 1928).

In view of the factual situation in this case, however, it is unnecessary for us to take a stand as between the views set forth by Bogert and in *Schwarz v. United States, supra,* for in our view of the case the facts fall within the exception mentioned in the *Restatement* and clearly establish a trust in favor of the plaintiff in the individual one-half legal

interest of the defendant in the property after the divorce. We find that when the Oak Park property was conveyed to the parties as tenants by the entirety it was understood by both that the defendant held his interest in the property in trust for the plaintiff. He acknowledged the existence of this trust when without question he signed the quitclaim deed for the sale of the Oak Park property in order to obtain money with which to repay the plaintiff's mother for the large share of the payment of the purchase price of the Teaneck property. In effect, the proceeds of the Oak Park sale were used in the purchase of the Teaneck property. The proceeds of the sale of the Oak Park property belonged to the plaintiff and she devoted these moneys to the purchase of the Teaneck property.

The conveyance of the Teaneck property in the joint names of the plaintiff and defendant was not for any different reason from the earlier conveyance of the Oak Park property. There is no indication of any change of intention on the part of the plaintiff. There is no proof of any donative intent on her part. There is nothing to negative the continuance of the defendant as trustee for the benefit of the plaintiff, just as he had been with respect to the Oak Park property. The defendant had the contract of sale made out in both names without any instruction in that regard from the plaintiff, and likewise the deed. This evidence affirmatively establishes a resulting trust of defendant's interest in the property.

The defendant claims that, regardless of the existence of any trust as to the Teaneck property purchased by the plaintiff, the improvements to the property were paid by checks drawn on the joint bank account in the Chase National Bank and that therefore his interest in the property is not subject to any claim for the cost thereof. It seems that prior to marriage the plaintiff had maintained a bank account in the Chase National Bank and that after marriage the defendant's name was added to the account. As far as deposits are concerned it appears that the defendant deposited his salary and some interest checks and also one check in

the amount of $1,000 received by him in settlement of an injury claim, but that all of the other monies had belonged to the plaintiff. The plaintiff produced proof that none of these funds deposited in the joint account that were used to pay the costs of these improvements belonged to the defendant, but rather consisted of her own personal monies. A mere deposit in a joint account does not constitute joint ownership where, as here, there is no proof of any contract with the bank to pay to the survivor and where there is a complete absence of proof of a donative intent, *Farris v. Farris Engineering Corp.*, 7 N. J. 487, 501–502 (1951). The monies devoted to the improvements are traceable to the plaintiff and there is no evidence that she at any time intended to give defendant any interest therein.

At this point we might mention that on the plaintiff's case it was brought out that the defendant paid some $75 for storm windows from his own funds, but the defendant makes no claim for this amount and in fact failed to present any evidence concerning it at the trial. Accordingly, we have disregarded this item in arriving at our conclusions.

We are of the opinion that there was a resulting trust in favor of the plaintiff of the interest in the Teaneck property that stood in the name of the defendant, and the improvements made thereon, and that therefore the defendant must convey the property to her.

The judgment of the Appellate Division is reversed and the judgment of the Chancery Division is reinstated.

*For reversal*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*For affirmance*—None.