## ENSOR *v.* ENSOR

[No. 91, September Term, 1973.]

*Decided December 6, 1973.*

The cause was argued before MURPHY, C. J., and BARNES, MCWILLIAMS, SINGLEY, SMITH, DIGGES and LEVINE, JJ.

*John H. Garmer* for appellant.

*Russell D. Karpook,* with whom were *Power & Mosner* and *William F. Mosner* on the brief, for appellee.

SMITH, J., delivered the opinion of the Court.

The questions presented in this case are whether there can be a resulting trust in favor of one spouse relative to real estate held as tenants by the entireties and, if so, whether sufficient evidence was presented in this proceeding to establish such a trust. We shall affirm the decision of the chancellor (Proctor, J.), who answered both questions in the affirmative.

Appellee, Elizabeth A. Ensor, instituted an action in the Circuit Court for Baltimore County against her former husband, appellant John B. Ensor, for sale in lieu of partition of the home formerly owned by the parties as tenants by the entireties. After sale was decreed, she filed a claim that "when said property was purchased in 1967 the said Elizabeth A. Ensor contributed from her personal funds the sum of Nine thousand ($9,000.00) Dollars toward the purchase price with the understanding and agreement of John B. Ensor that the aforesaid investment of his wife would be recognized as her sole and separate property that would be returned to her in the future as she might require."

The facts were succinctly summarized in the oral opinion of the chancellor:

> "The Court recognizes that Mrs. Mary B. Essich is the sister of the Plaintiff and is, therefore, inclined to be prejudiced in her sister's favor. However, the Court was impressed with her testimony; when she said she didn't know, she said she didn't know. [1] Her testimony was given in a forthright manner, and I believe she is telling the truth. Also the background of the testimony tends to lend support to what she said.

---

**1.** This probably was an inadvertence. We suspect what the chancellor meant was, "When she didn't know, she said she didn't know."

"We have here a case of an injury to Mrs. Ensor, apparently of a rather serious nature in view of the fact that judgment in her favor was in the amount of $15,000.00, which required medical attention and hospitalization both before the judgment and after the judgment. [2] Her testimony that her sister had to return to the hospital for further treatment after the judgment is not denied in any way by Mr. Ensor. Because of the nature of the injury and the possibility of the need for subsequent medical attention, there was some sound reason to make financial provision for such subsequent medical attention and hospitalization. This was not a case where damages had been recovered, and the Plaintiff had fully recovered.

"The testimony of Mrs. Essich was that she spent a month living with the Ensors while they were in Wheaton, Maryland; that there were discussions about the proceeds of the judgment; that the discussion was how to invest the money; and that Mr. Ensor said that the money was Betty's. She further testified — and this was borne out by Defendant's testimony — that he had purchased a new car with his own money. The net proceeds of his judgment was $2,000.00; he purchased a car for $1,800.00 and paid for it in cash very shortly after the judgments were paid off.

"The sister further testified that Mr. Ensor said he wanted his wife to invest the money in the best possible way to protect herself in the event she would require further medical care, and it was finally decided on an investment in real estate. The testimony is also clear that the down payment made on the Sweet Air home was $9,000.00, Mrs. Ensor's net proceeds of her judgment being somewhat more than that. The Plaintiff also

---

2. *See* Ensor v. Ortman, 243 Md. 81, 220 A. 2d 82 (1966), for an account of the incident in which these damages were recovered.

testified on this subject that it was the definite understanding this money was to be hers, and to be retained for her possible future needs for medical care and attention. She also testified to the fact that her husband purchased this automobile out of his share of the proceeds. She testified that Mr. Ensor agreed the money put into the house was hers. She further testified that on the night of October 7, 1971 when they split up and Mr. Ensor moved out, there was a discussion about the financial affairs, and that she said she wanted her $9,000.00 . . . , that he gave her a $50.00 check and said, 'You can have everything, I'll make the payments on the home.'

"The Court either as attorney or in the eight years I've been on the bench has seen hundreds of moments of stress such as there obviously was on that occasion, and is confident what was said by Mrs. Ensor about what took place is what took place.

"The Court finds as a matter of fact there was an agreement between the parties at the time of the purchase of the Sunburst Avenue home in Sweet Air, that the investment of $9,000.00 from Mrs. Ensor's funds was an investment in trust for her ultimate use and benefit. The decree will provide that she will receive $9,000.00 off the top before the balance is split off."

The chancellor in his opinion referred to *McCally v. McCally*, 250 Md. 541, 243 A. 2d 538 (1968), about which we shall have more to say later, and, to a large degree, based his holding upon the statement of our predecessors in *Reed v. Reed*, 109 Md. 690, 72 A. 414 (1909). In *Reed* a woman claimed that she had paid the entire purchase price for land conveyed to her and her husband as tenants by the entireties and that they had been subsequently divorced *a vinculo matrimonii*. She prayed that the land might be decreed to be her property, clear of any interest of her former husband. Judge Thomas noted for the Court that the bill did not

charge that the land was purchased by the husband and paid for with money of the wife or that the conveyance of the property to her and her husband was procured by fraud or undue influence on the part of the husband. As the Court put it:

> "[T]he theory on which the bill was filed is that the appellant having been divorced from the appellee, the mere fact that the property was paid for out of money belonging to the appellant is sufficient to authorize a Court of equity, either under the authority of Art. 16, sec. 37 of the Code, or independently of that section, to restore the property to her." *Id.* at 692.

The Court then went on to say:

> "[I]t is clear from the decisions in this State that where a wife during coverture voluntarily and without any fraud or undue influence on the part of the husband, conveys her property to him, the effect of a decree for divorce is not to vest in her an equitable title to such property. It has been repeatedly held by this Court that if a wife gives to her husband property belonging to her separate estate, or permits him to apply it to his own use, or he does so with her knowledge and consent, *in the absence of proof that it was given to him to be held in trust for her use,* or of a promise by the husband at the time to repay it, it will be presumed that it was intended as an absolute gift to him, and she has no claim therefor against him or his estate. *Edelen v. Edelen,* 11 Md. 415; *Kuhn v. Stansfield,* 28 Md. 210; *Farm. & Mer. Nat. Bank v. Jenkins,* 65 Md. 245; *Jenkins v. Middleton,* 68 Md. 540; *Taylor v. Brown,* 65 Md. 366." *Id.* at 692-93. (Emphasis added.)

The Court concurred in the conclusion reached by the chancellor below that the parties then held the property as tenants in common, but it remanded the case to provide the

former wife an opportunity to amend her bill in order that she might allege that her former husband had obtained his interest in the land by coercion or undue influence brought to bear by him upon his wife.

Mr. Ensor points out that in none of the prior decisions of this Court cited in *Reed* was there a factual situation in which funds of either spouse had been used to acquire real estate held as tenants by the entireties. He is correct in that position, but that does not change the underlying validity of the premise there set forth.

At the beginning of his opinion the chancellor in this case referred to *McCally v. McCally*, 250 Md. 541. At page 545 of that opinion the Court quoted from *Anderson v. Anderson*, 215 Md. 483, 138 A. 2d 880 (1958), where Judge Henderson said for the Court:

> "The controlling fact in the instant case is that the whole property was acquired as tenants by the entireties. In legal effect, and in the absence of proof that it was not her voluntary act, this transaction on its face amounted to an absolute gift. *Reed v. Reed*, 109 Md. 690; *Whitelock v. Whitelock*, 156 Md. 115, 120. Cf. *Columbian Carbon Co. v. Kight*, 207 Md. 203. The authorities generally are in accord. See Note 43 A.L.R.2d 917. The case of *Schwarz v. United States*, 191 F. 2d 618 (C.A. 4th), is not to the contrary. There the conveyance failed because the husband was in fact married to another woman, unknown to the wife. There is nothing in the provisions of the partnership act that prevents partners from agreeing as to the title to any specific assets. Subject to the rights of creditors, and unless fraudulent, partners may agree to a different distribution of the property on dissolution from that which obtains under section 18, in the absence of agreement. Cf. *Williams v. Dovell*, 202 Md. 351, 357; *Collier v. Benjes*, 195 Md. 168, 176, and *Noel v. Noel*, 173 Md. 152." *Id.* at 488-89.

In *McCally* a suit for sale in lieu of partition concerning

land in Montgomery County was filed by a woman against her former husband. The land had previously been conveyed to them as tenants by the entireties. The case primarily concerned contentions by the former husband "that the gift of an undivided one-half interest in the home property to the wife was conditioned on her remaining 'a faithful, chaste and dutiful wife and that the marriage of the parties would continue,' " and "that public policy and the principle of unjust enrichment should preclude the adulterous wife from retaining title to an undivided one-half interest in property, to the acquisition of which she ha[d] made no monetary contribution." In rejecting those contentions, Judge Finan said for the Court:

> "The lower court relied on *Gunter v. Gunter, supra,* as clearly establishing that in the absence of fraud or undue influence, the courts of Maryland will not inquire into the contribution by parties to a tenancy by the entireties prior to the joint acquisition. When we couple the decision of *Gunter,* with the language of *Anderson v. Anderson, supra,* whereby an absolute gift is presumed when the non-contributing spouse is given an equal interest in the property as one of the tenants by the entireties, we conclude that the lower court in rejecting the doctrine of *Moore* [*v. Moore,* 51 App. D.C. 304, 278 F. 1017 (1922)], correctly interpreted the law of this State." *Id.* at 548.

In *Anderson,* the former wife contended, on the theory of partnership, that from the proceeds of a foreclosure sale of land conveyed to spouses as tenants by the entireties, she was entitled to a distribution of sums she contributed to the acquisition of the land. It is already seen from what we have quoted from that opinion that the Court rejected that contention. The Court said, "We cannot find that the Chancellor was clearly wrong in finding no intention to change the legal title to the premises from a tenancy by the entireties to some other form of ownership." Implicit in that

statement is that on a proper state of facts such a finding could be made.

In *Gunter v. Gunter*, 187 Md. 228, 49 A. 2d 454 (1946), a former husband sought sale of a leasehold estate previously owned by him and his wife as tenants by the entireties. The chancellor dismissed the bill because the former husband was in default in the payments specified in the divorce decree. He did not, as was done in *Skirven v. Skirven*, 154 Md. 267, 140 A. 205, 56 A.L.R. 697 (1928), merely require the complainant to purge his contempt as a condition to granting him the relief he sought. In *Gunter*, in the process of reversing the decree dismissing the bill of complaint, Judge Henderson said for the Court:

> "It is virtually conceded that the effect of the decree of divorce *a vinculo* was to convert the tenancy by the entireties into a tenancy in common. *Reed v. Reed*, 109 Md. 690, 72 A. 414, 130 Am. St. Rep. 552; *Meyers v. East End Loan & Savings Ass'n*, 139 Md. 607, 116 A. 453. In the absence of fraud or undue influence the Courts will not inquire into the contributions of the parties prior to the joint acquisition, or attempt an apportionment. *Brell v. Brell*, 143 Md. 443, 122 A. 635; *Reed v. Reed*, *supra*. The general rule is also recognized that 'by express provision of our chancery statute, any tenant in common has the right to secure separate enjoyment of his interest either by partition or by sale and division of the proceeds. Code 1939, Art. 16 Sec. 159.' *Cook v. Hollyday*, 186 Md. 42, 45 A. 2d 768, 771. See *also Birckner v. Tilch*, 179 Md. 314, 325, 18 A. 2d 222. Unless there was something in the decree of divorce that operated to confer a vested right of continued occupancy upon the wife, it would seem that the relief sought should have been granted." *Id.* at 231.

Ensor contends that "this 'given to him to be held in trust for her use' exception to the presumption of gift is not the law of this State and should not be the law of this State."

The Maryland cases other than *Reed* seem to have concerned themselves primarily with the statement that where one spouse furnishes the consideration but title to land is placed in the names of husband and wife as tenants by the entireties there is a presumption of gift and that in the absence of proof of fraud or undue influence this presumption cannot be overcome. However, we do not understand those cases as having rejected the resulting trust theory. *Gunter* and *McCally* are not in conflict with our holding here, where our concern is not the respective contributions of the parties, but the question of title in accordance with the understanding of the parties at the time of the conveyance, a question allied with our pronouncements relative to fraud and undue influence. The statements relative to gift all speak of a *presumption.* This presumption may be rebutted if proper evidence is presented.

In *Anderson,* Judge Henderson mentioned *Schwarz v. United States,* 191 F. 2d 618 (4th Cir. 1951), a case that arose in Maryland. There, the Government brought an action to obtain a judgment for a deficiency in income taxes. Property had been conveyed to taxpayer and his wife as tenants by the entireties. The wife had supplied the money for the purchase. At the time of the conveyance the parties were not validly married, because the taxpayer, without the knowledge of his wife, had another living wife from whom he had not been divorced. The first wife later died. The tax lien was filed a year after her death. Thereafter, another marriage ceremony was performed because the wife "desired a record of her marriage and it was impossible to obtain a record of the [earlier] marriage in Austria because of the state of war then existing." Chief Judge Parker said for the court:

> "Any interest vested in the taxpayer by the conveyance was impressed with a trust in favor of the woman whom he had deceived with respect to his marital status and who put up the money to purchase the land with the purpose that the marital estate of tenancy by the entireties be created by the

conveyance. When the purpose of the conveyance failed because there was no valid marital status to which it could attach, there can be no question but that equity would impress the property with a resulting trust in favor of the woman who put up the purchase money. See Rosenthal v. Miller, 148 Md. 226, 129 A. 28; Latrobe v. American Colonization Society, 134 Md. 406, 106 A. 858; King v. Mitchell, 8 Pet. 326, 349, 8 L.Ed. 962; Oakhurst Land Co. v. Newell, 185 N. C. 410, 117 S. E. 341; 54 Am. Jur. p. 154 sec. 197; Pomeroy Equity Jurisprudence 4th ed. sec. 1032 et seq.; Bogert on Trusts vol. 2 sec. 468 pp. 1442-1443.[2] " *Id.* at 621.

Footnote 2 in the opinion is pertinent here. It said:

"The authorities cited have relation to conveyances in trust where the trust has failed; but there can be no difference in principle between such cases and one where a conveyance intended to create an estate by entireties fails because of the lack of a marital status to give it validity. The principle upon which the resulting trust arises is that, the purpose of the conveyance having been frustrated, the power of equity must be exerted to protect the interest of the person 'from whom the consideration comes, or who represents or is identified in right with the consideration.' Pomeroy Equity Jurisprudence 4th ed. sec. 1031." *Id.* at 621.

The court further said in *Schwarz:*

"Whether the trust be considered a trust resulting to the wife because of the failure of the purpose of the conveyance and of her having furnished the purchase money, or as a constructive trust raised in her favor because of the fraud practiced upon her as to the marital status of her husband, we think there can be no doubt that the equitable title in the property was in her when notice of the tax liens was filed amongst the land records and the present suit was brought." *Id.* at 623.

In *Rayher v. Rayher*, 14 N. J. 174, 101 A. 2d 524, 43 A.L.R.2d 909 (1953), a mother desired to give real estate to her daughter as a wedding gift. The husband insisted that his name be placed on the deed to facilitate the daughter's management of the real estate. His name was placed on the deed after he assured the mother that he would take his name off the deed whenever he was requested to do so. After the marriage, the husband and wife bought a home, paying most of the purchase price with proceeds from the sale of the real estate given by the mother. After a divorce the former wife brought a suit where she sought to establish a trust of the one-half interest in the land claimed by the former husband. Chief Justice Vanderbilt said for that court:

"Outside of New Jersey we find no unanimity of opinion. Three different views appear in the authorities. First, according to Bogert on *The Law of Trust and Trustees (1953 ed.), volume 2A, section 460,* 'if the wife pays the price, but has the deed run to herself and her husband as tenants by the entirety or as joint tenants, she is deemed to intend to make a gift to the husband of half the value of the use during their joint lives and of the right of survivorship,' citing among other authorities *Walker v. Walker,* 369 *Ill.* 627, 17 *N. E.* 2d 567 *(Sup. Ct.* 1939), *certiorari* denied 306 *U. S.* 657, 59 *S. Ct.* 774, 83 *L. Ed.* 1054 (1939); *Cisel v. Cisel,* 352 *Mo.* 1097, 180 *S. W.* 2d 748 *(Sup. Ct.* 1944); *Nussbacher v. Manderfeld,* 64 *Wyo.* 55, 186 *P.* 2d 548 *(Sup. Ct.* 1947). Second, the *Restatement of the Law of Trusts, sec.* 441, *comment (e)* takes the position that:

'The fact that the payor takes title to property in the name of himself and another jointly is an indication of an intention of the payor to make a beneficial gift of an undivided interest in the property to the other person; and *in the absence of evidence of a different intention of the payor,* the other person does not hold his interest upon a resulting trust for the payor. This is true whether the transfer was made to the payor and the other person as

joint tenants or as tenants in common.' (Italics supplied)

Third, there is substantial authority for the view expressed in *Schwarz v. United States*, 191 *F. 2d* 618, 621 (*C.A.* 4, 1951). Chief Judge Parker stated:

'The ordinary rule is that, where the wife pays for land and the title is made to her and husband, there is a resulting trust in her favor for the entire property in the absence of clear evidence that the husband was to have a beneficial interest.'

See also *Kelly Springfield Tire Co. v. Lester*, 190 *N. C.* 411, 130 *S. E.* 45 (*Sup. Ct.* 1925); *Eagle v. McKown*, 105 *W. Va.* 270, 142 *S. E.* 65 (*Sup. Ct.* 1928).

"In view of the factual situation in this case, however, it is unnecessary for us to take a stand as between the views set forth by Bogert and in *Schwarz v. United States, supra,* for in our view of the case the facts fall within the exception mentioned in the *Restatement* and clearly establish a trust in favor of the plaintiff in the individual one-half legal interest of the defendant in the property after the divorce. We find that when the Oak Park property was conveyed to the parties as tenants by the entirety it was understood by both that the defendant held his interest in the property in trust for the plaintiff. He acknowledged the existence of this trust when without question he signed the quitclaim deed for the sale of the Oak Park property in order to obtain money with which to repay the plaintiff's mother for the large share of the payment of the purchase price of the Teaneck property. In effect, the proceeds of the Oak Park sale were used in the purchase of the Teaneck property. The proceeds of the sale of the Oak Park property belonged to the plaintiff and she devoted these moneys to the purchase of the Teaneck property." *Id.* at 181-83.

We find *Rayher* persuasive here. In fact, it is closely akin to our own holding in *Bowis v. Bowis,* 259 Md. 41, 267 A. 2d 84 (1970). In that case a brokerage account had been placed in the joint names of the parties after the husband joined a stock brokerage firm. The reason given for this was so that the husband might trade the stock on a short term basis thereby achieving greater "buying power" in his job. The chancellor found there had been no intention on the part of the wife to make a gift to the husband of any interest in the $7500 worth of securities which had originally been a gift to her from her parents. Judge Finan said for the Court:

"While the wife in her testimony admitted that she knew that the profit from the stock trades were used for family support, nonetheless, the husband had agreed to return the stock to her. In fact, the husband admitted on cross-examination that he had agreed to return the stock account to the wife 'at any time she wanted.' While it is true that the husband used the income from the short-term stock trading to help support the family, the establishment of the account was more of a contribution to his 'on the job training' and a help towards supporting the family than a gift to him. In such a situation the stocks representing the jointly held account were not in actuality a joint asset of the parties as the husband had never contributed anything toward the purchase of the securities nor had the wife ever made a gift to him of any interest in the securities." *Id.* at 45.

He went on to cite *Lopez v. Lopez,* 206 Md. 509, 518, 112 A. 2d 466 (1955), and *Gebhard v. Gebhard,* 253 Md. 125, 129-30, 252 A. 2d 171 (1969), to the effect that the circuit court could make no adjustment of property rights in a situation where the spouse never contributed anything toward the purchase.

A conclusion that a resulting trust may be shown would not be inconsistent with holdings elsewhere. *See* 89 C.J.S. *Trusts* § 127 b. (1955), and 41 Am. Jur. 2d *Husband & Wife* § 95 (1968). In fact, the latter work states, citing *Reed* among other cases:

"If the husband's name as co-grantee was included

in the deed under an agreement or understanding with the wife that the real and exclusive ownership should be in her, her title will be protected accordingly, in the absence of a statute working a contrary result. The initial presumption of gift prevails only in the absence of proof establishing a contrary intent." *Id.* at 96.

*See also* Annot., *Realty in Spouses' Joint Names* 43 A.L.R.2d 917, § 5 at 926 (1955). Accordingly, we hold that if it is established that one spouse furnished the consideration for the purchase of real estate and if it is further established that the land was conveyed to husband and wife as tenants by the entireties under an agreement or understanding between husband and wife that the real and exclusive ownership should be in the spouse furnishing the consideration, the title of that spouse will be protected.

Citing *Battle v. Allen*, 250 Md. 672, 245 A. 2d 590 (1968), Ensor contends that Mrs. Ensor has not met her burden of proof. In the latter case Judge Marbury said for the Court:

"A resulting trust is one which exists because of the inferred or presumed intention of the parties where the terms of the disposition or accompanying facts establish that the beneficial interest is not to go with legal title. *Siemiesz v. Amend,* 237 Md. 438, 206 A. 2d 723. Since the law creates a strong presumption in favor of the legal title as evidenced by a deed, *Mountford v. Mountford,* 181 Md. 212, 29 A. 2d 258, a person who attempts to establish a resulting trust has the burden of proving such trust by plain, unequivocal, and convincing evidence. *Siemiesz v. Amend, supra; Fasman v. Pottashnick,* 188 Md. 105, 51 A. 2d 664. Indeed, this Court has stated that the evidence must be so clear and strong as to remove every reasonable doubt as to the existence of the trust. *Gray v. Harriet Lane Home,* 192 Md. 251, 64 A. 2d 102; *Sands v. Church, Etc.,* 181 Md. 536, 30 A. 2d 771. Parol evidence may be sufficient to establish a resulting trust, but the court will view it with great caution because it impeaches a document executed according to law

and recorded as evidence of title. Any other rule would disturb the reliance which the public places upon land title instruments. *Siemiesz v. Amend, supra; Fitch v. Double 'U' Sales Corp.*, 212 Md. 324, 129 A. 2d 93." *Id.* at 675-76.

*See also Taylor v. Merc.-Safe Dep. & Trust*, 269 Md. 531, 539, 307 A. 2d 670 (1973), and *Lacey v. Van Royen*, 259 Md. 80, 267 A. 2d 91 (1970).

Unlike some other cases involving a resulting trust, the chancellor was here persuaded by that which he heard. He saw the witnesses. He had the opportunity to observe their demeanor. He commented upon his impression of the testimony of Mrs. Ensor's sister. He might well have been persuaded, although he made no comment about it, by the equivocal nature of Ensor's testimony. At the conclusion of the cross-examination of Ensor by Mrs. Ensor's attorney, the record is:

"Q. I think I asked you this; I'll ask you one more question: do you deny that what Mrs. Essich said as to conversations she overheard was true, or is it your testimony that you do not recall those conversations? A. I don't recall it, sir. I can't deny something I can't recall.

"(The Court) He can't recall and can't deny."

There was substantial evidence from which the chancellor could conclude, as he did conclude, that Mrs. Ensor had established a resulting trust. Accordingly, under Maryland Rule 886 that determination will not be disturbed. Judge Proctor correctly determined the law and applied the law to the facts.

*Decree affirmed; appellant to pay the costs.*